### PEOPLE v. FAULHABER.

(Supreme Court, Appellate Division, First Department. July 11, 1912.)

CRIMINAL LAW (§ 1169*)—PREJUDICIAL ERROR—EVIDENCE OF OTHER OFFENSES.
    In a trial for complicity in a larceny of jewelry, it was prejudicial error to permit witnesses for the people to state that on prior occasions accused had exhibited articles which he admitted stealing, where accused's connection with the particular offense was doubtful.

    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3088, 3137–3143; Dec. Dig. § 1169.*]

    Ingraham, P. J., dissenting.

Appeal from Court of General Sessions, New York County.

William A. Faulhaber was convicted of grand larceny in the second degree, and he appeals. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, MILLER, and DOWLING, JJ.

S. Wechsler, of New York City, for appellant.
R. S. Johnstone, of New York City, for respondent.

MILLER, J. It is undisputed that Mamie Howe, a young woman about 20 years of age, stole a bag of jewelry from her aunt. She claimed that she was persuaded to do so by the defendant and another boy by the name of Garrison, and that, after the theft, the defendant took the bag from her and went away with it. The jewelry was never recovered. The defendant was arrested several months later. Mamie Howe and Garrison were living at the time with a man and woman who went by the name of Mr. and Mrs. De La Mater.

The evidence against the defendant consisted of the aforesaid testimony of Mamie Howe; testimony of Mrs. De La Mater to the effect that on the night of the theft the defendant exhibited to her the bag of jewelry and informed her that Mamie had taken it from her aunt; the testimony of Mr. De La Mater to the effect that the defendant

afterwards told him how he and Garrison disposed of the jewelry and spent the money; and the testimony of police officers, tending to show that the defendant kept himself concealed for two or three months after the theft. The defendant denied that he was in any way involved in the crime.

The people's evidence, apart from the testimony of the police officers, consisted of the testimony of witnesses of at least doubtful char-. acter. There are some circumstances slightly suggesting that the De La Maters and Mamie Howe wanted to implicate the defendant in order to screen Garrison. Mamie was arrested directly after the theft, and there is evidence indicating that she at first implicated Garrison, but said nothing about the defendant.

Of course, there is ample evidence to sustain the verdict. But the defendant denied the theft, and there is more than a possibility that, although not guilty, he is in his present predicament because of evil association. He seems to have been a chum of Garrison. We should not disturb the judgment of conviction, unless satisfied that the defendant has not had what the law accords him, a fair trial. Two or three examples of grossly improper rulings on the admission of evidence will suffice.

The witness Kate De La Mater was allowed, over the persistent objections of the defendant, to state that, on two prior occasions, the defendant exhibited to her articles which he admitted stealing. She said that on one occasion he showed her a watch and money, which he said he got "off a fellow who was asleep in a back room of a saloon." The court, upon the answer being given, struck out the words "who was asleep in a back room," and instructed the jury that there was no presumption of crime in the defendant's having the watch and money. The witness said that on another occasion the defendant showed her some rugs, which he said he got off the railing from a store around the corner. The court struck out a part of that answer, although it was responsive, and instructed the jury that there was no presumption "of improper acquirement of the property on the defendant's part." Officers Kelly of the Detective Bureau was allowed to state that, on the night of the robbery, he visited the defendant's home and informed his mother that Mamie Howe accused both her son and Garrison of taking the bag of jewelry, and that upon another occasion, upon his inquiring of her whether she had heard from her son, she replied that she had not, began to cry, and said that he must be dead. After the jury had been out some time, they were brought into court, and stated that they had not yet agreed.. They were again sent out, with some further instructions, and later were brought back, and, at their request, the testimony of Officer Kelly was read to them. They then retired, and, upon again being brought into court, rendered a verdict of guilty, with a recommendation for mercy.

It thus quite plainly appears that the evidence, erroneously admitted, actually did prejudice the defendant's case. Of course, it is unnecessary to discuss the question whether the said rulings were erroneous. They are so plainly so that we are at a loss to understand why the

trial counsel persisted in asking the questions, or on' what theory the court allowed them.

The judgment of conviction should be reversed, and a new trial granted.

McLAUGHLIN, SCOTT, and DOWLING, JJ., concur. INGRA-HAM, P. J., dissents.