(September 17, 1913.)

## STATE, Respondent, v. B. F. O'NEIL, Appellant.

[135 Pac. 60.]

BANKS AND BANKING—FALSE REPORT—INDICTMENT—SUFFICIENCY OF—STATUTORY CONSTRUCTION—MEANING OF WORD "MAKES"—EVIDENCE—ADMISSION OF—JURORS—DISQUALIFICATION OF—PROSECUTING ATTORNEY—REMARKS OF—INSTRUCTIONS.

1. Under the provisions of sec. 7679, Rev. Codes, the indictment or information must be direct and certain in regard to (1) the party charged; (2) the offense charged; (3) the particular circumstances of the offense charged when such circumstances are necessary to constitute a complete offense.

2. Under the provisions of sec. 7677, Rev. Codes, the indictment must contain the title of the action, specifying the name of the court to which the indictment or information is presented, and the names of the parties, a statement of the acts constituting the offense in ordinary .and concise language and in such manner as to enable a person of common understanding to know what is intended.

3. *Held*, that the indictment conforms substantially to the provisions of said sections 7679 and 7677, Rev. Codes.

4. Sec. 7128, Rev. Codes, provides, among other things, that "Any person who knowingly makes or publishes in any way whatever or permits to be so made or published any . . . . report, statement, exhibit or other publication . . . . which . . . . shall contain any statement which is false or wilfully exaggerated . . . . shall be deemed guilty of a felony. . . . . "

5. The word "makes" as used in said section has a meaning broad enough to cover the complete commission of the crime referred to in said section.

6. The word "makes" as used in said section means not only the signing but the passing or issuing of said report.

7. An indictment is sufficient if it describes the offense in the language of the statute by which it is created or defined, and the words employed make the charge clear to the common understanding.

8. *Held*, that other false statements and reports made by the defendant in regard to said bank were properly admitted in evidence.

9. Where a defendant denies knowledge or intent, evidence of other acts of the same character or kind on his part may be admitted so that the jury may determine whether the defendant intended to make a false report.

10. Where the crime is committed in a systematic manner, it is competent to prove other similar transactions occurring at different times and places to show the intent or motive of the accused.

11. *Held,* that the court did not err in admitting in evidence certain comparative statements, such statements having been taken from numerous and voluminous records which were already in evidence, and which were made for the purpose of assisting the jury in arriving at their verdict.

12. The law requires counsel for the defendant in selecting a juror to try diligently to ascertain his state of mind and his qualification as a juror. If he neglects to do so, the defendant cannot complain after the trial.

13. The prosecuting attorney and his assistants must keep within reasonable bounds in the trial of a criminal case, and must not make any remarks that would tend to prejudice the jury outside of what the evidence shows or warrants.

14. It is not error for the court to refuse to give requested instructions when such instructions are embodied in other instructions given.

APPEAL from the District Court of the Eighth Judicial District, in and for Kootenai County. Hon. Robt. N. Dunn, Judge.

Appellant was convicted of making a false report of the condition of a state bank and sentenced to the state penitentiary for a term not less than two years and not exceeding ten. Judgment *affirmed.*

McFarland & McFarland, for Appellant.

The indictment is insufficient, first, because the facts therein stated do not constitute a public offense, and, second, because it does not substantially conform to the requirements of sec. 7679, Rev. Codes, in that it is not direct and certain as regards the offense charged, or the particular circumstances of the offense charged when they are necessary to constitute a com-

plete offense.   (22 Cyc. 295, 296; *People v. Palmer,* 53 Cal. 615; *People v. Simpton,* 133 Cal. 367, 65 Pac. 834; *People v. Robles,* 117 Cal. 681, 49 Pac. 1042; *People v. Cohen,* 118 Cal. 74, 50 Pac. 20; *People v. Eppinger,* 105 Cal. 36, 38 Pac. 538; *People v. Webber,* 138 Cal. 145, 70 Pac. 1089; *People v. Mahony,* 145 Cal. 104, 78 Pac. 354.)

These decisions were rendered under sec. 952, Penal Code of California, which is identical with sec. 7679, Rev. Codes of Idaho.   (See, also, *State v. Witherspoon,* 115 Tenn. 138, 90 S. W. 852; *Funk v. State,* 149 Ind. 338, 49 N. E. 266; *State v. Chinn,* 142 Mo. 507, 44 S. W. 245; *Strope v. State,* 120 Ind. 562, 22 N. E. 773; *Whitney v. State,* 10 Ind. 404.)

In *State v. Swensen,* 13 Ida. 1, 81 Pac. 379, this court held the information, which in our opinion is less defective than the indictment in this case, insufficient.

The general rule is that on a prosecution for a particular crime, evidence which in any manner shows or tends to show that the accused has committed another crime wholly independent of that for which he is on trial, even though it be a crime of the same sort, is irrelevant and inadmissible.   (12 Cyc. 405; *People v. Molineux,* 168 N. Y. 264, 61 N. E. 286, 62 L. R. A. 193; *People v. Jones,* 32 Cal. 80; *People v. Schweitzer,* 23 Mich. 301; *Welhousen v. State,* 30 Tex. App. 623, 18 S. W. 300; *People v. Hurley,* 126 Cal. 351, 58 Pac. 814; *Raymond v. Commonwealth,* 123 Ky. 368, 96 S. W. 515; *People v. Dixon,* 118 App. Div. 593, 103 N. Y. Supp. 186; *State v. McNamara,* 212 Mo. 150, 110 S. W. 1067; *Brown v. State,* 54 Tex. Cr. 121, 112 S. W. 80; *State v. Sparks,* 79 Neb. 504, 113 N. W. 154; *State v. Missouri Pac. Ry. Co.,* 219 Mo. 156, 117 S. W. 1173; *State v. Hight,* 150 N. C. 817, 63 S. E. 1043; *People v. Dudenhausen,* 130 App. Div. 760, 115 N. Y. Supp. 374; *Gray v. State,* 160 Ala. 107, 49 So. 678; *People v. Friedman,* 149 App. Div. 873, 134 N. Y. Supp. 153; *Dyar v. United States,* 186 Fed. 614, 108 C. C. A. 478; *Johnson v. Commonwealth,* 144 Ky. 287, 137 S. W. 1079; *Shaffner v. Commonwealth,* 72 Pa. 60, 13 Am. Rep. 649; *Clark v. State,* 59 Tex. Cr. 246, 128 S. W. 131, 29 L. R. A., N. S., 323; *Gross v. State,* 61 Tex. Cr. 176, 135 S. W. 373, 33 L. R. A., N. S., 477.)

There are exceptions to the general rule that evidence of other offenses is not admissible, but the evidence of other crimes must tend directly to prove the defendant guilty of the crime charged.   (12 Cyc. 406.)

The only testimony tending to connect appellant with the making of the alleged false report, or the commission of the crime charged, or tending to prove knowledge or notice of the alleged falsity of said report, is that of Gary Burke. If the testimony of Gary Burke is true, he was an accomplice, and his evidence is not sufficient upon which to base a conviction. (Sec. 7871, Rev. Codes; *State v. Knudtson,* 11 Ida. 524, 83 Pac. 226.)

J. H. Peterson, Attorney General, James A. Wayne and John P. Gray, for Respondent.

An indictment in the form of the present one was considered by this court in the case of *State v. Paulsen,* 21 Ida. 686, 123 Pac. 588. An information identical with the indictment in this case drawn under the same section of the statute was before this court in *State v. Cutts, ante,* p. 329, 133 Pac. 115,

In the event that the defendant is not able to identify that particular report for the making of which he is to be tried, then he has the right to demand of the state a bill of particulars. (*Bailey v. Commonwealth,* 130 Ky. 301, 113 S. W. 140; *State v. Rathbone,* 8 Ida. 161, 67 Pac. 186.)

If the court resorted to conjecture and speculation in order to hold an indictment faulty, there would scarcely be an indictment that would be admittedly sufficient.   (*Cochran v. United States,* 157 U. S. 286, 15 Sup. Ct. 628, 39 L. ed. 704.)

The second objection of counsel to this indictment, viz.: That it does not charge what was done with the report after it was signed or made by the defendant, is disposed of in the case of *State v. Cutts, supra.*

An indictment is sufficient if it describes the offense in the language of the statute by which it is created or defined. (*People v. Butler,* 1 Ida. 231–234.)

An indictment is sufficient if the words employed make the charge clear to the common understanding (*Ex parte Pierce,*

155 Fed. 665; *Burton v. United States*, 202 U. S. 344, 26 Sup. Ct. 688, 50 L. ed. 1057, 6 Ann. Cas. 362), with such a degree of certainty as to apprise the defendant of the nature of the charge against him, and protect him against a second conviction for the same offense. (*People v. Helmer*, 154 N. Y. 596, 49 N. E. 249; *Chamberlain v. State*, 80 Neb. 812, 115 N. W. 555; *Richburger v. State*, 90 Miss. 806, 44 So. 772; *Wall v. State*, 2 Ala. App. 157, 56 So. 57; *State v. Rathbone, supra.*)

"In such cases a broad range of inquiry is permitted, and when the evidence tends even remotely to establish the ultimate fact, its admission will not be ground for reversal." (*Spurr v. United States*, 87 Fed. 701, 31 C. C. A. 202; *Coffin v. United States*, 162 U. S. 669, 16 Sup. Ct. 943, 40 L. ed. 1109.) Evidence is proper to show the course of business for the purpose of permitting the jury to determine whether or not the intent was shown. (*United States v. Breese*, 131 Fed. 915; *Thomas v. United States*, 136 Fed. 159, 69 C. C. A. 157; *United States v. Kenney*, 90 Fed. 257.)

Other acts of kindred nature are competent to illustrate the character of the transaction in question and throw light on the intent with which the particular act was done. (*Walsh v. United States*, 174 Fed. 616, 98 C. C. A. 461; *United States v. Dexter*, 154 Fed. 890–895; *Van Gesner v. United States*, 153 Fed. 46, 82 C. C. A. 180; *Williamson v. United States*, 207 U. S. 425, 28 Sup. Ct. 163, 52 L. ed. 278; *Prettyman v. United States*, 180 Fed. 30, 103 C. C. A. 384; *State v. Davis*, 6 Ida. 159, 53 Pac. 678; *State v. Schmitz*, 19 Ida. 566, 114 Pac. 1; *State v. Hammock*, 18 Ida. 424, 110 Pac. 169; *Qualey v. Territory*, 8 Ariz. 45, 68 Pac. 546; *State v. Low*, 6 Kan. App. 110, 50 Pac. 914; *Territory v. McGinnis*, 10 N. M. 269, 61 Pac. 208; *People v. Harben*, 5 Cal. App. 29, 91 Pac. 398; *People v. Smith*, 9 Cal. App. 644, 99 Pac. 1111; *People v. Arnold*, 17 Cal. App. 68, 118 Pac. 729.)

Acts may be proved and facts and circumstances shown which tend to establish that the crime for which the defendant is on trial is part of a series, and for the purpose of showing system, habit and fraudulent design. (*People v. Ruef*, 14 Cal. App. 576, 114 Pac. 48, 54; *Williams v. State*, 4 Okl. Cr.

523, 114 Pac. 1114; *Ray v. State,* 4 Ga. App. 67, 60 S. E. 816; *State v. Merry,* 20 N. D. 337, 127 N. W. 83–88; *American Surety Co. v. Pauley,* 72 Fed. 470, 18 C. C. A. 644; *Lillis v. United States,* 190 Fed. 630, 111 C. C. A. 362; *Jones v. United States,* 179 Fed. 584, 103 C. C. A. 142; *Griggs v. United States,* 158 Fed. 572, 85 C. C. A. 596; *State v. Wilson,* 72 Minn. 522, 75 N. W. 715; *Gallardo v. State* (Tex. Cr.), 40 S. W. 974; *Leach v. State,* 46 Tex. Cr. 507, 81 S. W. 733; *Melton v. State,* 62 Tex. Cr. 362, 140 S. W. 230.) A series of mutually dependent crimes may be shown where they were committed under a system which was relative to the inquiry. (*Dotterrer v. State,* 172 Ind. 357, 88 N. E. 689; *State v. Dulaney,* 87 Ark. 17, 112 S. W. 158, 15 Ann. Cas. 192; *Charles v. State,* 58 Fla. 17, 50 So. 419; *Territory v. West,* 14 N. M. 546, 99 Pac. 343; *Jaynes v. People,* 44 Colo. 535, 99 Pac. 325, 16 Ann. Cas. 787; *State v. Craddick,* 61 Wash. 425, 112 Pac. 491.)

The evidence was also admissible for the purpose of showing knowledge. (*Spurr v. United States, supra; United States v. Breese, supra; Lobosco v. United States,* 183 Fed. 742, 106 C. C. A. 476; *Sapir v. United States,* 174 Fed. 219, 98 C. C. A. 227; *People v. Wakely,* 62 Mich. 297, 28 N. W. 871; *State v. Stamper,* 159 Mo. App. 382, 141 S. W. 432; *People v. Robertson,* 6 Cal. App. 514, 92 Pac. 498; *Anderson v. Commonwealth* (Ky.), 117 S. W. 364; *People v. Zimmerman,* 11 Cal. App. 115, 104 Pac. 590; *People v. Harben,* 5 Cal. App. 29, 91 Pac. 398; *People v. Soto,* 11 Cal. App. 431, 105 Pac. 420.) Subsequent acts may be shown for the purpose of showing the intent and motive. (*State v. Calhoun,* 75 Kan. 259, 88 Pac. 1079; *Luery v. State,* 116 Md. 284, Ann. Cas. 1913D, 161, 81 Atl. 681.)

The admission of tabulated statements prepared by experts was proper. (*State v. Brady,* 100 Iowa, 191, 62 Am. St. 560, 69 N. W. 290, 36 L. R. A. 693; *State v. Clements,* 82 Minn. 434, 85 N. W. 229; *State v. Salverson,* 87 Minn. 40, 91 N. W. 1; *Bartley v. State,* 53 Neb. 310, 73 N. W. 744; *Brown v. United States,* 142 Fed. 1, 73 C. C. A. 187.)

If Burke had not testified at all, there was sufficient testimony to have convicted O'Neil. O'Neil signed the report. (*Morse v. United States,* 174 Fed. 539, 98 C. C. A. 321; *United*

*States v. Allen,* 47 Fed. 696; *United States v. Harper,* 33 Fed. 471.)

It is the law that a defendant must diligently try to ascertain the state of mind of the jurors or he cannot complain after the verdict (*Aud v. State,* 36 Tex. Cr. 76, 35 S. W. 671; *State v. Jones,* 89 S. C. 41, Ann. Cas. 1912D, 1298, 71 S. E. 291; *State v. Jones,* 90 S. C. 290, 73 S. E. 177; *Speer v. State,* 57 Tex. Cr. 297, 123 S. W. 415; *State v. Mott,* 29 Mont. 292, 74 Pac. 728; *Territory v. Bryson,* 9 Mont. 32, 22 Pac. 147); and the defendant who takes chances on a favorable verdict cannot be heard to complain thereafter.

SULLIVAN, J.—On January 5, 1912, a grand jury of Shoshone county presented an indictment against the appellant, charging him with having on the 8th day of May, 1909, in connection with one G. Scott Anderson, made a false report concerning the affairs, financial condition and property of the State Bank of Commerce of Wallace, Shoshone county, at the close of business of said bank on the 28th day of April, 1909, in violation of sec. 7128, Rev. Codes, appellant at that time being president and director of said State Bank of Commerce.

Thereafter, upon application of appellant, the place of trial was changed from Shoshone county to Kootenai county, and after the cause was transferred to Kootenai county, appellant interposed a demurrer to the indictment, which demurrer was overruled by the court. The cause was thereafter tried to a jury and a verdict of guilty was rendered against the appellant on the 10th day of February, 1913; and thereafter on the 13th day of February, 1913, judgment and sentence was passed upon appellant, whereby he was sentenced to serve a term in the state's prison at Boise for a period of not less than two years nor more than ten years. Thereafter a motion for a new trial was denied, and this appeal is from the judgment and order denying the new trial.

One hundred and ninety-five errors are assigned, the first of which goes to the action of the court in overruling the appellant's demurrer to the indictment.

It is first contended that under the provisions of sec. 7679, Rev. Codes, indictments must be direct and certain, first, as to the party charged, second, as to the offense charged, and third, as to the particular circumstances of the offense charged, when they are necessary to constitute a complete offense.

The charging part of the indictment is as follows: "That on or about the 8th day of May, 1909, and before the finding of this indictment, at the county of Shoshone, in the State of Idaho, the said B. F. O'Neil, being then and there an officer, to wit, president and director of the State Bank of Commerce of Wallace, Idaho, a corporation organized and then and there existing under the laws of the State of Idaho, and as such corporation then and there engaged in a general banking business at said city of Wallace, in Shoshone County, State of Idaho, and the said G. Scott Anderson, being then and there an officer, to wit, director of said State Bank of Commerce of Wallace, Idaho, did, as such officers of said State Bank of Commerce of Wallace, Idaho, at the time and place aforesaid, and before the finding of this indictment, knowingly, wilfully, unlawfully, feloniously and fraudulently make a certain report in writing concerning the affairs, financial condition and property of said State Bank of Commerce of Wallace, Idaho, at the close of business of said State Bank of Commerce of Wallace, Idaho, on the 28th day of April, 1909, which said report in writing made by the said B. F. O'Neil and G. Scott Anderson, as aforesaid, then and there contained a statement that the loans and discounts (including the loans and discounts, savings account) owned by said State Bank of Commerce of Wallace, Idaho, at the close of business on the said 28th day of April, 1909, amounted to the sum of $452,854.20, and which said report contained a further statement that the overdrafts in said State Bank of Commerce of Wallace, Idaho, at the close of business on said 28th day of April, 1909, amounted to the sum of $16,540.05, and were secured, and which said report contained a further statement that said State Bank of Commerce of Wallace, Idaho, at the close of business on said 28th day of April, 1909, owned United States, state, municipal, and other bonds and warrants amounting to

the sum of $139,373.70 and consisting of Kootenai County, Idaho, warrants of the par value of $11,486.22, and City of Wallace, Idaho, warrants of the par value of $5,170.25, and Shoshone County, Idaho, warrants of the par value of $81,-553.39, and county orders of the par value of $1,196.24, and Hood Lumber Company bonds of the par value of $15,000.00, and Hot Lake Sanitarium bonds of the par value of $14,967.60, and Amador Railroad bonds of the par value of $10,000.00, and which said report contained a further statement that said State Bank of Commerce of Wallace, Idaho, at the close of business on said 28th day of April, 1909, had a surplus fund amounting to the sum of $30,000.00, and which said report contained a further statement that said State Bank of Commerce of Wallace, Idaho, at the close of business on said 28th day of April, 1909, had deposits amounting to the sum of $716,034.39, each and every of the aforesaid statements so contained in the aforesaid report made by the said B. F. O'Neil and G. Scott Anderson, as aforesaid, being then and there false and then and there known to the said B. F. O'Neil and G. Scott Anderson to be false; loans and discounts (including the loans and discounts, savings account) owned by said State Bank of Commerce of Wallace, Idaho, at the close of business on said 28th day of April, 1909, amounting in truth and in fact to the sum of $426,916.00, and the overdrafts in said State Bank of Commerce of Wallace, Idaho, at the close of business on said 28th day of April, 1909, amounting in truth and in fact to the sum of $116,549.05, and none of said overdrafts being secured in any manner whatsoever, and the United States, State, municipal and other bonds and warrants owned by said State Bank of Commerce of Wallace, Idaho, at close of business on said 28th day of April, 1909, amounting in truth and in fact to the sum of $64,406.10, and then and there consisting of Kootenai County, Idaho, warrants of the par value of $1,486.22, and City of Wallace, Idaho, warrants of the par value of $170.25, and Shoshone County, Idaho, warrants of the par value of $61,553.39, and county orders of the par value of $1,196.24, and the said State Bank of Commerce then and there, in truth and in fact, not owning any Hood

Lumber Company bonds, or Hot Lake Sanitarium bonds, or Amador Railroad bonds whatever, and the surplus fund of said State Bank of Commerce at the close of business on said 28th day of April, 1909, amounting in truth and in fact to the the sum of $25,000.00, and the deposits in said State Bank of Commerce of Wallace, Idaho, at the close of business on said 28th day of April, 1909, amounting in truth and in fact to the sum of $721,034.39; each and every of which said false statements so contained in said report as aforesaid being then and there known to the said B. F. O'Neil and G. Scott Anderson to be false, and being intended by the said B. F. O'Neil and G. Scott Anderson to give, and having a tendency to give, a greater apparent value to the shares and property of said State Bank of Commerce of Wallace, Idaho, than said shares and property then and there really and in fact possessed.

"All of which is contrary to the form, force and effect of the statute in such cases made and provided, and against the peace and dignity of the State of Idaho."

Sec. 7677, Rev. Codes, provides that the indictment must contain, "1. The title of the action, specifying the name of the court to which the indictment is presented, and the names of the parties. 2. A statement of the acts constituting the offense in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended." From a careful inspection of the indictment, we find it is direct and certain in regard (1) to the party charged, which is the appellant; (2) to the offense charged; (3) to the particular circumstances of the offense charged which constitutes the offense. And we find that it complies with the provisions of sec. 7677 in that it contains the title of the action, specifies the name of the court to which the indictment was presented and the name of the party indicted, and it also contains a statement of the facts constituting the offense in ordinary concise language in such a manner as to enable a person of common understanding to know what was intended.

An indictment similar in form to the one under consideration here was considered by this court in *State v. Paulsen,* 21

Ida. 686, and again on June 28, 1913, an information substantially identical with the indictment in this case and drawn under the same section of the statute, was before this court in *State v. Cutts, ante,* p. 329, 133 Pac. 115, and in both of said cases the indictment and information were held sufficient.

The objections mainly relied upon by counsel for appellant are (1) that the indictment does not sufficiently identify the particular report, for the making of which the defendant was on trial; (2) that the indictment does not charge to whom the report was made or what was done with the report after it was made and sworn to by him.

The indictment shows (1) that it was the report which the defendant made in connection with G. Scott Anderson; (2) that it was the report made by them on May 8, 1909; (3) that it was the report of the condition of the State Bank of Commerce at the close of business on April 28, 1909; (4) that it was the report which contained a statement of the loans and discounts, giving the amount of the same; (5) that it was the report in which at least nine other specific matters are referred to, giving certain figures showing the condition of said bank. It certainly is sufficient to advise the defendant of the nature of the charge against him, and it describes the offense with such particularity as to serve as a shield in case of a second prosecution for the same offense. (See *Bailey v. Commonwealth,* 130 Ky. 301, 113 S. W. 140; *State v. Rathbone,* 8 Ida. 161, 67 Pac. 186.)

It was said in *Cochran v. United States,* 157 U. S. 286, 15 Sup. Ct. 628, 39 L. ed. 704, as follows:

"Few indictments under the national banking law are so skillfully drawn as to be beyond the hypercriticism of astute counsel—few which might not be more definite by additional allegations. But the true test is, not whether it might possibly have been made more certain, but whether it contains every element of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction."

The objection is urged that the indictment does not charge what was done with the report after it was signed or made by the defendant.

Said sec. 7128, Rev. Codes, provides as follows: "Any person who knowingly makes or publishes in any way whatever, or permits to be so made or published, any book, prospectus, notice, report, statement, exhibit or other publication of, or concerning the affairs, financial condition or property of, any corporation, joint-stock association, copartnership or individual, which said book, prospectus, notice, report, statement, exhibit or other publication shall contain any statement which is false or wilfully exaggerated or which is intended to give, or which shall have a tendency to give, a less or greater apparent value to the shares, bonds or property of said corporation, joint-stock association, copartnership or individual, or any part of said shares, bonds or property or any part thereof, shall really and in fact possess, shall be deemed guilty of a felony, and upon conviction thereof shall be imprisoned for not more than ten years or fined not more than ten thousand dollars, or shall suffer both said fine and imprisonment."

The word "makes" as used in that section has a meaning broad enough to cover the complete commission of the crime defined in said section. It does not have the strained and technical meaning which counsel for appellant would attribute to it. It does not mean the physical or manual act of writing or transcribing the report, nor does it mean the signing of the report nor the swearing to the report. The making of the report, within the purview of the provisions of that section, is the issuance of the report. The word "makes" is defined by leading lexicographers substantially as follows: To form of materials, to cause to exist in a certain form, to construct, to fabricate; to produce, to create, to execute; to execute with requisite formalities; to form and publish a judgment of the facts; to put; to enact; to form or compose.

It was held by this court in the case of *State v. Cutts, supra,* that "makes" as used in said section was not only the signing but the passing or issuing of the report, that word carrying with it a charge of the commission of any and all acts neces-

sary to complete the making of a false report. An indictment is sufficient if it describes the offense charged in the language of the statute by which it is created or defined. (*People v. Butler,* 1 Ida. 231.) An indictment is sufficient if the words employed make the charge clear to the common understanding. (*Ex parte Pierce,* 155 Fed. 663; *Burton v. United States,* 202 U. S. 344, 26 Sup. Ct. 688, 50 L. ed. 1057, 6 Ann. Cas. 362.)

If by reason of the defendant's long management of said bank and his participation in the making of many reports he was not able to identify the particular report for which he was indicted, it was not ground for demurrer, but should have been reached by a demand for a bill of particulars.

We conclude that the indictment is sufficient.

The admission of certain testimony over the objection of counsel for appellant is assigned as error.

That testimony went to prove that other false statements or reports had been made by the appellant to the state bank commissioner; that appellant prepared and presented to the board of directors false statements; that unofficial statements were made to the general public at times other than when the regular calls were made by the state bank commissioner that were false; that the reason for making the false statements was excessive withdrawals of funds by appellant for his own personal use and for speculative enterprises in which he was interested; that a system and method was adopted by appellant by which he secured funds of the bank and concealed the fact that money was withdrawn for his own use.

In *Spurr v. United States,* 87 Fed. 701, 31 C. C. A. 202, the defendant was charged with the violation of the national bank act, and in deciding the case the court used the following language with reference to a question similar to the one under consideration here:

"In such cases, a broad range of inquiry is permitted and when the evidence tends even remotely to establish the ultimate fact, its admission will not be ground for reversal. . . . . Evidence of similar transactions to illustrate the character of the act in question has repeatedly been held competent in both criminal and civil cases, and is often the only method of estab-

lishing the intent with which they were done. . . . . The objection that the collateral transactions were too remote is not tenable.    It goes only to the weight of the testimony.    The period of time within which the matter offered to establish the guilty purpose must have occurred to permit of their admission is largely discretionary with the court. . . . . In *United States v. Thirty-six Barrels of High Wines,* 12 Int. Rev. Rec. 40, 41, Judge Woodruff said that, for the purpose of showing the *quo animo* of an act under inquiry, he would not hesitate to admit evidence of acts running back to the enactment of the internal revenue law, which had then been passed fully five years.    Similar evidence was received in *Coffin v. United States,* 162 U. S. 664, 16 Sup. Ct. 943, 40 L. ed. 1109, for the same purpose.    It is every-day practice to admit proof of this character to show intent on the trial of persons charged with counterfeiting.    The evidence was properly received, and its purpose carefully defined and limited, in the charge of the court, in accordance with the case last cited.''

That case went to the supreme court of the United States (*Spurr v. United States,* 174 U. S. 728, 19 Sup. Ct. 812, 43 L. ed. 1150), and was reversed, but on another ground.

In *Coffin v. United States, supra,* the court held that such evidence was proper to show the course of business for the purpose of permitting the jury to determine whether or not the intent was shown.    As bearing upon this question, see *United States v. Breese,* 131 Fed. 915.

In *United States v. Kenney,* 90 Fed. 257, where the defendant was charged with the violation of the national bank act, the court held that acts of kindred character were admissible to show motive or intent.    (See, also, *Walsh v. United States,* 174 Fed. 616, 98 C. C. A. 461.)    There are many other cases that might be cited upon this question.    This court has repeatedly recognized the same principle of law.    (*State v. Davis,* 6 Ida. 159, 53 Pac. 678; *State v. Schmitz,* 19 Ida. 566, 114 Pac. 1; *State v. Hammock,* 18 Ida. 424, 110 Pac. 169.)

In *Territory v. West,* 14 N. M. 546, 99 Pac. 343, the court held that where the crime is committed in a systematic manner, it is competent to prove other similar transactions, oc-

curring at different times and places, to show intent or motive of accused. (See, also, *Jaynes v. People,* 44 Colo. 535, 99 Pac. 325, 16 Ann. Cas. 787.)

This evidence was also admissible for the purpose of showing knowledge on the part of appellant. The appellant pretended he did not know that the statement which he signed was false. In *Spurr v. United States,* 87 Fed. 701, 31 C. C. A. 202, *United States v. Breese,* 131 Fed. 915, and *Lobosco v. United States,* 183 Fed. 742, 106 C. C. A. 476, it was held that where the government was required to prove guilty knowledge, evidence of the commission of other similar offenses by the accused than those charged in the indictment was admissible.

In *Anderson v. Commonwealth* (Ky.), 117 S. W. 364, the defendant was convicted of swearing to a false report as to the condition of a bank. Other prior reports were offered and received in evidence for the purpose of showing that the defendant knowingly made the false statement charged in the indictment, and the supreme court of Kentucky held that such evidence was admissible. There are many other cases that hold to the same effect, but it is not necessary for us to cite them here.

Assignments of error Nos. 143 and 145 go to the admission in evidence of the books of the First Bank of Harrison and the Bank of Latah, and in receiving oral testimony in relation thereto. The sworn statement made to the bank commissioner of the condition of the bank on April 6, 1906, was admissible in evidence for the purpose of showing appellant's intent, motive, knowledge and habit and system of running banks. One witness testified that said statement was prepared directly under the supervision of appellant, and for the purpose of showing that that statement was false in the item of $12,500 shown to be due by the Bank of Latah to the State Bank of Commerce, it was necessary to show the manner in which that transaction arose, and in doing so, to produce the books of the Bank of Latah. Those books were intended, at least, to show that instead of the Bank of Latah owing the Bank of Commerce, the account of the Bank of Commerce with the Bank of Latah was overdrawn. This apparently was the

fictitious means which appellant had taken to pay for his bank stock and had carried on his books and reported to the bank commissioner an asset which the bank never had. Some of the entries in the books, it is true, were made prior to the incorporation of the State Bank of Commerce, but for the purpose of showing the continuity of the transaction, the State Bank of Commerce having succeeded the Bank of Commerce, a private bank owned by the appellant, and the books being carried right along, it was necessary to show those entries for the purpose of proving the falsity of the statement of April 6, 1906.

The books of the Bank of Harrison were admissible for the purpose of showing the concealed indebtedness of the appellant in the worthless note of the Harrison Lumber & Box Co. of $15,000, which item went into the statement of April 28, 1909, and which was listed and reported as one of the assets of the State Bank of Commerce in that statement. And said evidence was admissible for the further purpose of showing the manner in which appellant had covered up his indebtedness whereby he acquired the Harrison Hotel, and on the very day of making the statement for which he was convicted, he took from the bank $30,000 more, represented by four notes purported to have been signed by a man by the name of Wall, which was a part of his indebtedness at the time the bank closed and was concealed in the statement of April 28, 1909.

Numerous assignments of error have been made in regard to the admission of certain other evidence, and counsel for appellant have presented and argued said assignments to a considerable length orally and in their brief. But upon a careful examination of the action of the court in regard to the admission of such evidence, we are satisfied that said assignments are without merit, and that no reversible error has been committed by the court in the admission of such testimony.

The action of the court in admitting in evidence certain comparative written statements made by expert accountants, which in one column shows the various items in the report as reported to the bank commissioner, in another column the true condition of the bank in relation to each of said items,

and in another column the difference between the true condition and the reported condition, is assigned as error. The objection to those comparative statements was that they were hearsay and not the best evidence. In *State v. Brady,* 100 Iowa, 191, 62 Am. St. 560, 69 N. W. 290, 36 L. R. A. 693, the supreme court of Iowa held that such tabulated statements were proper, and said, among other things:

"It is said that these exhibits were not the best evidence— that they were secondary, hearsay and incompetent. . . . . They were simply tabulated statements, made by competent persons, taken from voluminous and numerous claims and records which were already in evidence, made for the purpose of assisting the jury in arriving at their verdict. As such they were competent."

In *State v. Clements,* 82 Minn. 434, 85 N. W. 229, referring to such tabulated statements, the court said:

"Either side can have the advantage of such evidence, and usually come prepared to detect any errors of calculation so made. Indeed, it is not now an open question in this court that such a course is proper." (See, also, *State v. Salverson,* 87 Minn. 40, 91 N. W. 1; *Bartley v. State,* 53 Neb. 310, 73 N. W. 744.)

In *Brown v. United States,* 142 Fed. 1, 73 C. C. A. 187, the court said:

"The testimony of experts upon results appearing from account-books which are in evidence is generally accepted as a valuable aid in the consideration of the accounts, and to that extent relaxation of the rule as to the best evidence is uniformly approved by the authorities. (1 Greenleaf on Evidence, sec. 93.)"

The court properly instructed the jury concerning the purpose of such testimony and the weight to be given the same. There was no error in admitting such evidence.

(4) Certain assignments of error go to the alleged disqualification of two of the jurors who sat at the trial of this case. Certain affidavits were used on the motion for a new trial, from which it appears that said jurors had expressed an opinion in regard to the guilt of said defendant, and it is al-

leged that such disqualification was not discovered until after the trial.

It appears from said affidavits that the appellant was led to believe that said jurors were friendly to him, and it also appears that counsel for appellant propounded but very few questions to said jurors on their *voir dire*. At least, the record shows that said jurors were not thoroughly examined in regard to their bias or prejudice in the matter. The law requires counsel for defendant to thoroughly examine a juror in order to ascertain his state of mind, and if counsel fails or neglects to do so, he cannot complain after the trial. (*Aud v. State*, 36 Tex. Cr. 76, 35 S. W. 671; *State v. Jones*, 89 S. C. 41, Ann. Cas. 1912D, 1298, 71 S. E. 291; *State v. Jones*, 90 S. C. 290, 73 S. E. 177; *Speer v. State*, 57 Tex. Cr. 297, 123 S. W. 415; *State v. Mott*, 29 Mont. 292, 74 Pac. 728; *Territory v. Bryson*, 9 Mont. 32, 22 Pac. 147.) The defendant who fails to try diligently to ascertain the mind of the jury and takes chances on a favorable verdict, cannot be heard to complain thereafter. Both of said jurors filed affidavits denying the statements accredited to them by the affidavits filed by appellant.

In *State v. Davis, supra*, it was.said by this court: "It would be a dangerous practice to establish the rule that the verdict of a jury, which is fully sustained by the evidence, should be set aside on the ground that one or two *ex parte* affidavits are presented to the effect that one of the individual jurors had expressed an opinion prior to the trial to the effect that the accused is guilty, but which statement is denied by the juror, who is proven to be a man of good reputation for truth and veracity."

The court did not err in denying the motion for a new trial on the ground of misconduct of certain jurors.

(5) The conduct of the assistant prosecuting attorney in conducting the prosecution and making certain remarks during the trial of the case is assigned as error. It is to be regretted when associate prosecuting attorneys do not keep within reasonable bounds in trying a case on behalf of the state, as the state does not desire the conviction of anyone

to be brought about by remarks or arguments of counsel made for the purpose of biasing or prejudicing the jury and without regard to legitimate deductions to be drawn from the evidence. We have examined the remarks objected to made by the assistant prosecuting attorney. In the light of the evidence, said remarks were not proper or justified, but we do not think they are sufficient to warrant a reversal of the case. There is, therefore, no merit in that specification of error.

(6) The refusal to give instructions Nos. 9, 12 and 14, requested by defendant is assigned as error. We find on an examination of said instructions and the instructions given by the court that the requested instructions were covered by and included within those given by the court. There was, therefore, no error in the court's refusal to repeat instructions that had already been given.

We have considered the other errors assigned, but conclude that it is not necessary for us to refer to each in detail here, as we find no reversible error in the record.

The judgment must therefore be *affirmed,* and it is so ordered.

Ailshie, C. J., and Stewart, J., concur.