[No. 24165.   Department One.   December 27, 1932.]

THE STATE OF WASHINGTON, *Respondent,* v. W. D.
COMER, *Appellant.*[1]

[1]Reported in 17 P. (2d) 643.

*Colvin & Rhodes,* for appellant.

*Robert M. Burgunder, Ben A. Maslan,* and *T. H. Patterson,* for respondent.

MILLARD, J.—The defendant was charged by indictment returned by the grand jury in King county, and convicted by a jury, of the crime of publishing a false statement of assets of a savings and loan association. The indictment reads as follows:

"He, the said W. D. Comer, in the County of King, State of Washington, on or about the 26th day of December, 1930, then and there being the President and one of the directors of the Puget Sound Savings & Loan Association, a corporation organized as and engaged in the saving and loan business in the City of Seattle, said county and state, did then and there wilfully, knowingly, unlawfully, falsely and feloniously make, state and publish a false statement in writing of the assets and resources of the Puget Sound Savings & Loan Association at the close of the business of said association on the 23rd day of December, 1930, which said statement falsely set forth, under the heading 'RESOURCES' that the loans of said association on improved real estate at the close of business on said 23rd day of December, 1930, amounted to $11,149,321.65, and further falsely set forth that the total resources of said association at said time amounted to $15,726,848.91, whereas in truth and in fact said loans on improved real estate at said time did not exceed $10,400,000.00 and the total resources of said association at said time did not exceed $14,977,527.26; and each of said false statements so made, stated and published by said W. D. Comer were then and there known by him to be false."

The defendant has appealed from the judgment and sentence pronounced upon him.

Envelopes addressed to all the shareholders of the Puget Sound Savings & Loan Association were deposited in the United States post office in Seattle on December 26, 1930. Each envelope contained the fol-

lowing Christmas greeting and announcement of dividend:

"GREETINGS.

To OUR MEMBERS:

In extending to you Cordial Greetings of the Season and Sincere Wishes for a Happy and Prosperous New Year, it is our pleasure to announce our

60TH SEMI-ANNUAL DIVIDEND
At the rate of
5 PER CENT PER ANNUM

To be credited to Savings Accounts December 31, 1930

This liberal return upon your Savings has been earned through Careful Management by executives of mature experience, supplemented by State Supervision.

In addition to this dividend, our surplus has been substantially increased, giving further Protection to your funds, aside from our investments in first mortgage loans upon improved real estate and in government, state and municipal bonds.

During the past year we have opened up more than 4,500 new Savings Accounts, all of which is very encouraging. Looking forward to another year of growth,

Cordially yours,

William D. Comer, President.

Puget Sound Savings & Loan Association,

1414 Fourth Avenue, Seattle, Washington."

This prosecution was predicated upon the following financial statement which accompanied the Christmas greeting:

"CONSOLIDATED STATEMENT

PUGET SOUND SAVINGS & LOAN ASSOCIATION
At close of business, December 23, 1930

RESOURCES

| | |
|---|---|
| Cash on Hand and in Banks..........$1,493,754.79 | |
| Bonds and Warrants.................. 1,217,637.80 | |
| | $2,711,392.59 |
| Loans on Improved Real Estate.................. | 11,149,321.65 |
| Loans on Collateral ........................... | 53,795.52 |
| Loans on Savings Shares....................... | 56,808.81 |
| Interest Accrued.............................. | 85,000.00 |

| | |
|---|---:|
| Real Estate Sold Under Contract | 482,635.28 |
| Other Real Estate | 296,996.90 |
| Banking House, Furniture and Fixtures | 775,898.16 |
| Safe Deposit Vaults and Equipment | 115,000.00 |
| | $15,726,848.91 |

LIABILITIES

| | |
|---|---:|
| Savings | 15,006,348.79 |
| Incomplete Loans | 18,520.65 |
| Contingent Fund and Undivided Profits | 701,979.47 |
| | $15,726,848.91" |

A list of the officers, headed by appellant as president, was printed on the reverse side of the financial statement. That statement was also published in two of the daily newspapers of Seattle. The following was added to that statement, which contained the same figures as the statement distributed through the mails:

"SAVINGS PLACED HERE ON OR BEFORE JANUARY 15, 1931
WILL EARN FULL SIX MONTHS' DIVIDENDS BY
JUNE 30, 1931
We have never paid less than 5 per cent on
savings."

The name of the association and the name of its president were shown at the bottom of the statement:

"PUGET SOUND SAVINGS & LOAN ASSOCIATION
William D. Comer, President."

Subsequently, the association was found to be insolvent, and it was taken over by a receiver for liquidation. A grand jury investigation resulted in indictment charging appellant with making a false statement of assets of the institution of which he was the president and a director. The statutory provision which appellant was charged with violating reads:

"Every person who . . . shall make, state or publish any false statement of the amount of the assets or liabilities of any savings and loan association shall be guilty of a felony." Rem. Comp. Stat., § 3743.

Error is first assigned upon the overruling of appellant's demurrer to the indictment. Counsel for appellant insist that the indictment was insufficient, in that it failed to state to whom the alleged false statement was made or in what manner the statement was published; and that the indictment was duplicitous in charging that the "Loans on Improved Real Estate" were false in a named amount, and further charging that the total resources were false in the same amount.

It will be observed that, under our statute (Rem Comp. Stat., § 3743), it is a felony to "make, state or publish any false statement," etc. The indictment is sufficient, as it substantially follows the language of the statute.

"It is undoubtedly the rule in this jurisdiction that it is sufficient, in charging a crime, to follow the language of the statute, where such crime is there defined and the language used is sufficient to apprise the accused, with reasonable certainty, of the nature of the accusation, so that he may be able to avail himself of his acquittal or conviction as a protection against further prosecutions for the same offense." *State v. Randall,* 107 Wash. 695, 182 Pac. 575.

See, also, *State v. Tiffany,* 44 Wash. 602, 87 Pac. 932, and *State v. Lawrence,* 165 Wash. 508, 6 P. (2d) 363, to the effect that an information or indictment charging a statutory crime is sufficient if it follows the language of the statute.

It was not essential that the indictment charge the defendant with "wilfully, knowingly" making a false statement. It clearly appears, however, that the appellant wilfully and knowingly made the statement. As the president of the institution, he examined the financial statement (he cannot now successfully deny that he knew what the statement contained) which purported to show the true condition of the institution, and then authorized the publishing of that statement;

hence, he wilfully and knowingly made and published the statement.

"Where a cashier of a state bank signs a paper purporting to show the condition of such bank, knowing what it contains, he knowingly makes said report and should be held responsible for the truth of the statements therein, unless he was himself deceived through no fault or negligence on his part." *State v. Cutts*, 24 Ida. 329, 133 Pac. 115, 116.

The indictment is not insufficient in failing to allege to whom the false statement was made or in what manner the statement was published. The essential element of the crime is making a false statement. Whether the publishing of that statement was accomplished by newspaper advertising, a house-to-house distribution by a messenger, or by mailing the statement to the association's shareholders, is not material. It is not necessary to state in the indictment the particular names of each of the persons to whom the statement was given.

Under an Idaho statute making it an offense for a person to knowingly make or publish a false statement concerning the financial condition of a corporation, the defendant, in *State v. O'Neil*, 24 Ida. 582, 135 Pac. 60, was charged with knowingly making a certain report in writing concerning the affairs of a designated state bank. Defendant contended that the indictment was insufficient in not sufficiently identifying the particular report, and in failing to charge to whom the report was made or what was done with it after it was made and sworn to by the defendant. The court said:

"The word 'makes' as used in that section has a meaning broad enough to cover the complete commission of the crime defined in said section. It does not have the strained and technical meaning which counsel for appellant would attribute to it. It does not mean the physical or manual act of writing or transcribing

the report, nor does it mean the signing of the report nor the swearing to the report. The making of the report, within the purview of the provisions of that section, is the issuance of the report. The word 'makes' is defined by leading lexicographers substantially as follows: To form of materials, to cause to exist in a certain form, to construct, to fabricate; to produce, to create, to execute; to execute with requisite formalities; to form and publish a judgment of the facts; to put; to enact; to form or compose.

"It was held by this court in the case of *State v. Cutts, supra,* that 'makes,' as used in said section, was not only the signing but the passing or issuing of the report, that word carrying with it a charge of the commission of any and all acts necessary to complete the making of a false report. An indictment is sufficient if it describes the offense charged in the language of the statute by which it is created or defined (citing cases)

. . .

"If by reason of the defendant's long management of said bank and his participation in the making of many reports he was not able to identify the particular report for which he was indicted, it was not ground for demurrer, but should have been reached by a demand for a bill of particulars.

"We conclude that the indictment is sufficient."

We held in *State v. Worsham,* 154 Wash. 575, 283 Pac. 167, that, in a charge of grafting, it was unnecessary to allege the particular names of the police officers to be influenced on behalf of a certain man then under arrest. In *State v. Considine,* 16 Wash. 358, 47 Pac. 755, we held that it was not necessary to recite the name of the woman in an information charging a person with the offense of employing a female person in a saloon. In *Jackson v. State,* 298 Pac. (Okla. Crim. App.) 313, the charge was that the defendant committed criminal libel. The information did not state the name of the person or persons to whom the publication of the statement was made. The information

was held to be sufficient, as it stated facts sufficient to advise the defendant of the nature of the crime charged against him. To the same effect is *State v. Mason*, 155 Ark. 189, 244 S. W. 6.

■ The indictment was not duplicitous in charging that the loans on improved real estate were false in a certain amount, and further alleging that the total resources were false in the same amount. The indictment would not have been duplicitous had it charged the appellant with making a false statement of the assets of the association and further alleged that the statement was false in two or more enumerated particulars. *State v. O'Neil*, 24 Ida. 582, 135 Pac. 60. Only one crime—that of making a false statement—would have been charged. In the case at bar, the only crime charged was that of making a false statement.

■ At any rate, the appellant was not prejudiced by the allegations of which he complains, inasmuch as the trial court in the following instruction limited the charge to the falsity of the statement as to the amount of the loans on improved real estate:

"If you do not find under these instructions, beyond a reasonable doubt, that said portion of said consolidated statement, plaintiff's Exhibit 'F,' designated as 'Loans on Improved Real Estate,' was false, then you cannot find that the total amount of 'resources' set forth in said consolidated statement as '$15,726,848.31' was false, and you must return a verdict of not guilty."

■ Another question presented by the appeal is whether the evidence was sufficient to show commission of the crime charged; that is, did appellant make and publish the financial statement upon which this prosecution is based; and, if so, was that statement false?

There was competent evidence, which the verdict reflects was accepted by the jury as true, that the Christmas greeting card was prepared by a publicity man

employed by the appellant for his various companies; that, after making certain changes in the card, appellant authorized its distribution to the shareholders. It also clearly appears that, at a conference of three of the association's officers—Mr. Comer, the president, Mr. Cushing, the vice-president, and Mr. Tewell, the secretary—it was decided that a statement should be prepared showing the financial condition of the association as of December 23, 1930.

Pursuant to that decision, the financial statement was prepared. That statement was submitted to appellant, who examined it, made no changes therein, and authorized its publication. That constituted a making and publishing of the statement by the appellant. For the truth of that financial statement, which he knowingly made, the appellant is responsible. *State v. Cutts*, 24 Ida. 329, 133 Pac. 115; *State v. O'Neil*, 24 Ida. 582, 135 Pac. 60. There was evidence—competent and sufficient—to warrant the jury in concluding as it did, that the financial statement made by appellant was false, as in the indictment alleged.

A careful examination of the record not disclosing reversible error, the judgment is affirmed.

TOLMAN, C. J., MITCHELL, HOLCOMB, and PARKER, JJ., concur.