# Bell v. Commonwealth.

(Decided September 30, 1927.)

## Appeal from Bullitt Circuit Court.

1.   Larceny.—Indictment for stealing chickens of the value of $2 or more, brought under Ky. Stats., sec. 1201c, held sufficient, under Criminal Code of Practice. sec. 128, where it alleged that the chickens were the property of the estate of deceased and were in possession of the administratrix and were carried away by defendant without consent of owner or administratrix with felonious intent to convert same to defendant's own use and to permanently deprive the owner of "his" property, notwithstanding use of word "his."

2. Larceny.—In prosecution for stealing chickens of the value of $2 or more, brought under Ky. Stats., sec. 1201c, evidence of guilt held sufficient to submit to jury.

3. Criminal Law.—Claimed error in sustaining objection to question as to defendant's reputation held not available, where no exception was taken and no statement was made as to what the witness would answer.

4. Witnesses.—In a criminal case, defendant may not prove his reputation for truthfulness, where the state has not attacked his reputation therefor.

5. Criminal Law.—Sustaining objection to question as to what was defendant's reputation for truth and honesty in the neighborhood in which he lived, if error, held harmless, where subsequently five or six other witnesses testified to his good reputation for honesty and morality.

6. Larceny.—In prosecution for stealing chickens of the value of $2 or more, brought under Ky. Stats., sec. 1201c, refusing to instruct on petit larceny held not error on ground that evidence of value of chickens stolen was not conclusive, where two witnesses testified that they were worth $25, and there was no contrary testimony.

DAVID SESSMER for appellant.

FRANK E. DAUGHERTY, Attorney General, and G. D. LITSEY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

At his trial in the Bullitt circuit court on an indictment charging him with stealing chickens of the value of $2 or more, which is made a felony by section 1201c of our present Statutes, the appellant, H. J. Bell, was convicted and punished by confinement in the penitentiary for a period of 1 year. His motion for a new trial was overruled, and on this appeal from the judgment pronounced on the verdict his counsel urges as grounds for reversal (1) failure of the court to sustain the demurrer filed to the indictment; (2) refusal of the court to sustain defendant's motion for a peremptory instruction directing his acquittal; (3) error in the admission of incompetent evidence offered by the commonwealth, and in excluding competent evidence offered by the defendant; and (4) erroneous instructions and failure of the court to instruct on the whole law of the case; each of which will be briefly considered in the order stated.

We have carefully read the indictment, and it is difficult for us to see how it could be improved upon. The chickens alleged to have been stolen were in possession

of Mrs. Mary Ash, the widow and administratrix of Wood J. Ash, the latter of whom died some month or so before the commission of the crime, and his widow continued to reside in his residence and was preparing to have a sale of his personal property with the view of settling his estate. The indictment charged that the stolen chickens were "the property of the estate of Wood J. Ash, deceased, and being in the possession of Mary Ash, administratrix of the estate of said Wood J. Ash," and that they were taken and carried away by defendant "without the consent of the said owner of the chickens, and without the consent of said administratrix of the estate of said Wood J. Ash," and that they were taken "with the felonious intent to convert the same to his (Dr. H. J. Bell's) own use and permanently deprive the owner of his property therein."

In support of the demurrer it is attempted to be argued that the ownership of the chickens was not properly averred, and that the alleged intention of defendant "to permanently deprive the owner of his property therein" was fatal to the indictment because the singular possessive pronoun "his" was used instead of the neuter plural pronoun "their," since the allegations as to the ownership in the indictment was thereby made joint and not singular. In the case of Thomas v. Commonwealth, 1 Ky. Law Rep. 407, 10 Ky. Op. 860, in defining the necessary ownership of stolen property to sustain a prosecution for larceny, this court said:

"It is well established that where one holds property for another, as bailee, agent or in any other capacity, the property may be laid in the bailee or in the true owner."

Common-law authorities are cited in support of that statement, wherein it is pointed out that the essential element in larceny is that the stolen property should be "that of another," and which element is satisfied if it is alleged and proved that the one from whom the property was taken was in the rightful possession of it, although another might be the true owner. See, also, to the same effect, the text in 25 Cyc. 35; 35 C. J. 757, par. 77; 17 R. C. L., pages 22, 60, 67, and pars. 25, 66, 72. Moreover, section 128 of our Criminal Code of Practice provides that if the property be described with sufficient certainty to identify it, an erroneous allegation as to the

owner of it will not be material. There is no authority to the contrary, and this ground for reversal is essentially without merit.

Ground 2 requires a brief statement of the facts. On the late afternoon or early evening of April 29, 1926, the appellant appeared at the store of a merchant in Mt. Washington and inquired of the latter as to the whereabouts of one Mr. Grigsby. He also inquired of the merchant if he, the latter, had any chicken coops and received an affirmative answer. Defendant disappeared from the store in the automobile in which he was riding, and early the next morning about 25 chickens were missed from the henhouse on the Ash farm. Mrs. Ash was away from home that night, having spent it at the home of a neighbor, and no one appears to have stayed there durnig that night. It was a comparatively short distance south from Mt. Washington and located some distance off the pike commonly known as the ''Bardstown road'' and not far from where it crosses Salt river. Neighbors and interested parties soon gathered in and discovered automobile tracks made by a balloon tire going from the pike along the road leading to the Ash home and stopping at a point near it. From that place human tracks were seen going in the direction of and along the route to the henhouse, and they were made by two different persons making two trips or by four persons on one trip, but which fact was the correct one the witnesses could not tell. Chicken feathers were found around the place where the automobile stopped, and it is perfectly manifest that the automobile was the one used by the thief.

About 2 o'clock that night a farmer living within 40 yards of the ''Bardstown road,'' and about 1 mile north from Mt. Washington, was awakened by some noise out on the pike, and when he went out to ascertain what had happened he discovered a small light over the bank by the side of the pike and just beyond his house, and heard the sound of chickens and saw a man throwing something out of the automobile, which had been turned over in the ditch by the side of the road, into an adjoining field or lot belonging to the witness, who then said to defendant: ''I heard chickens, and I thought maybe some one had our chickens, and I thought I would come out and see.'' Whereupon defendant answered and said: ''There are some chickens here, but I do not know how came them here.'' Witness then went back to his house,

and in a short time defendant appeared at the door and wanted witness to watch his automobile, and witness went out to where it was, when more conversation occurred in which witness said: ''I saw you throwing them out of the machine, and they must be yours,'' when defendant said: ''You are just a damn liar, I never threw them out of the machine.'' In the meantime witness saw defendant take some bulky package out of the machine and throw it into a gully some distance away.

Early the next morning others appeared upon the scene, including Mrs. Ash and some of the Ash heirs, and 19 living chickens were then discovered in the lot where the farmer stated defendant had thrown them the night before, and they were thoroughly identified as the chickens described in the indictment. The various witnesses then and there present testified to feathers being in the machine as well as in the chicken coop, and one chicken was found at that time with its feet caught under the cushion of the seat and had been left in the automobile. Five or six chickens had died or had been killed, making the 25 missing from the Ash farm. The merchant at Mt. Washington identified the coop found in the gully, referred to as the one belonging to him and which he had placed at the rear of his store building. Defendant made a number of incriminatory remarks before the witnesses gathered there on the early morning of the 29th of April, but denied that he had any chickens in his automobile or that he had stolen any.

Defendant's testimony was, in substance, that he had started to Salt river near where it crosses the ''Bardstown road'' to put in a portion of the night in fishing; that he inquired of the merchant at Mt. Washington upon arrival there for his friend Grigsby who later went with him fishing, but after a short while, Grigsby unceremoniously left him, but he (defendant) remained until about 1:30 in the night fishing in the dark and then concluded to go back to his home in Louisville, and left his fishing tackle in the waters of Salt river, and that he never stole any chickens from any one, nor did he have any in his automobile. He did not introduce Grigsby as a witness in his behalf, nor did he have him subpoenaed, although he stated on the stand that Grigsby, whom he claimed had formerly gone fishing with him, was still a resident of Mt. Washington within the county of the trial, but that he had made no inquiry of his whereabouts or what his testimony would be, nor made any effort to obtain his presence at the trial.

In the light of the facts as so substantially but briefly outlined (there being other incriminating circumstances which we deem it unnecessary to. state), it is difficult for us to perceive upon what grounds it could be seriously urged that the motion for a peremptory instruction should have been sustained because of the insufficiency of the evidence of the commonwealth to establish the charge, and this ground is manifestly without merit.

A careful reading of the brief of counsel for appellant discloses no complaint of the first part of ground 3, i. e., error in the admission of incompetent evidence offered by the commonwealth; but he does seriously complain of the refusal by the court to permit a witness introduced by him to answer this question:

"Do you know his (defendant's) reputation for good moral character, for truth and honesty, in the neighborhood in which he lives?"

The objection to the question made by the commonwealth was sustained by the court, but no exception was taken thereto by defendant, nor did he make any avowal as to what the witness would answer, and for those reasons, if for no other, this alleged or supposed error is unavailing on this appeal. But upon the merits of the court's refusal, it will be observed that two traits of character were embodied in the question, one for truth and the other for honesty. The one affects the credibility of defendant as a witness, while the other affects his moral standing. In support of this objection counsel for defendant cites with apparent confidence the recent case of Pickelseimer v. Commonwealth, 217 Ky. 608, 290 S. W. 498, but there is a wide gulf separating the proper practise announced by that opinion and the one contended for by defendant's counsel. That case dealt specifically and alone with the competency of *substantive* evidence to sustain the defendant's *moral* character on his trial under a criminal charge involving moral turpitude, and it was held that such testimony was competent. But, such substantive testimony to prove defendant's character for *truthfulness,* when it has not been attacked by the commonwealth, is an entirely different question, and which this court and others have continuously held could not be done. Because the defendant coupled the two traits of character in his one question was the reason that the court sustained an objection thereto, and which

fact counsel in his brief says was stated by the court at the time, but which does not appear in the record.

Following the introduction of that witness some five or six others were introduced by defendant, and they sustained his character for honesty and moral standing among his neighbors and acquaintances. So that, if there had been no objection to the question, and it was clear that the court erred in sustaining the objection thereto, it could hardly be said that defendant's rights were substantially prejudiced, in view of the fact that the character of testimony that defendant sought from that witness was given by the large number of others introduced by him. It is clear, therefore, that this ground is unmeritorious.

The only argument made in support of ground 4 is that the court should have given an instruction on petit larceny under the claim that the proof was not conclusive as to the value of the chickens. One witness testified that they were worth $25, and Mrs. Ash said that they were worth $1 each. There was no testimony to the contrary, and it is well settled that it is not error for the court to refuse an instruction based upon facts for which there is no testimony to support.

The direct question was involved in the case of Klette v. Commonwealth, 165 Ky. 430, 177 S. W. 258, wherein the same contention as here made was overruled, and the same rule of practice has been sustained and followed by us in numerous cases involving other crimes. Some other points of less substance than those above are referred to in brief, but they are so clearly without merit that we have concluded to pass them without discussion.

Perceiving no error authorizing a reversal of the judgment or otherwise, it is affirmed.