THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v.
LOUISA BARNES, PLAINTIFF IN ERROR.

Submitted July 5, 1907—Decided November 11, 1907.

1. The evidence in this case respecting the physical condition of a moribund woman, coupled with her expressed certainty of impending death, *held* to be sufficient to support the admissibility of her statements as dying declarations.
2. When a dying declaration was in writing, signed by the declarant, and the writing was lost, parol evidence of its contents was admissible, although it appeared that a copy of the original was in existence. Where such copy was afterward, without objection, received in evidence, the court committed no error injurious to the defendant by striking out the parol testimony of the contents of the original, which testimony did not substantially differ from that furnished by the copy.
3. In the trial of an indictment for the commission of an abortion, bottles of ergot and knitting needles found in the house of defendant, were admissible in evidence when it appeared that ergot and needles were sometimes used to produce miscarriages.

On error to Camden County Quarter Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices FORT and REED.

For the plaintiff in error, *James G. Horner* and *William Early.*

For the defendant in error, *Henry S. Scovel,* prosecutor of the pleas.

The opinion of the court was delivered by

REED, J. This writ brings up a judgment entered upon a conviction of the defendant, Louisa Barnes, for committing an abortion upon one Mary Lane, by reason of which the said Mary Lane subsequently died.

The fact that an abortion was committed upon Mary Lane by someone, and that her death resulted therefrom, is demonstrated.

The case of the state in its attempt to identify the defendant as the abortionist rests upon two *ante mortem* statements made by Mary Lane, and rests mainly upon the second, without which there is no foundation for the conviction.

The defendant insists that neither of these statements was admissible as a dying declaration.

The first of these declarations was made to one Mary Campbell, to whom Mary Lane said, "A colored woman did it."

The second and the important declaration was made by signing a written statement, as follows: "I, Mary Lane, realizing that I am about to die, make this my last statement about Mrs. Barnes, a colored woman living on Mulford street, below Van Hook, Camden, N. J., who performed an operation on me. I told her I was pregnant, and wanted to get rid of the child. Mrs. Barnes did something to me. She opened my womb with her fingers, and I commenced to bleed immediately. She also gave me two bottles of medicine to take, and said it would be all right. I paid $5. I was sent there by Mrs. Small, of 833 Commerce street, Camden, New Jersey. MARY LANE.

"Witnesses—I. I. EMMENS, M.D.; FRANK PAUL, JOHN S. SMITH."

The important question is whether it appeared to the trial court that these statements were made when the declarant was under the conviction that her death was close at hand.

Mary Lane died at the Philadelphia Hospital on June 13th. On the early morn, about half-past one in the morning of June 12th, Mary Campbell, an aunt of Mary Lane, visited her at the hospital. She described her condition as so emaciated that she never would have known her. She says: "She [Mary Lane] talked to me in gasps. I had to lean over her and listen to every word accurately to understand her. She felt she was going to die. She told me so. She did not know what minute." It was at this interview that she said, "A woman in Camden did it—a colored woman in Camden."

John S. Smith, a detective, had, on June 13th, taken the defendant to the hospital to see if Mary Lane would identify

her, but Mary Lane was in no condition to identify anyone, and in fact died in about half an hour after the arrival of Mr. Smith. Mr. Smith says he saw Mary Lane the day before, the 12th, and that she knew she was not going to get well, and that she told him so.

This was also, it is perceived, on the day when the declaration was made to Mary Campbell.

The testimony of the physicians exhibit the physical condition of the injured woman as calculated to lead her to believe that her condition was hopeless.

So there were facts proven sufficient to support the ruling of the trial judge admitting the declaration.

Respecting the written statement made on June 13th—the day of the death of the declarant—there is, in addition to the testimony already mentioned, the testimony of Dr. Emmens, the house physician at the hospital. He says that before she made the statements contained in the paper he told her she was going to die, and she said she was going to die. Mr. Smith also says he went to the hospital on the day the written statement was made for the purpose of procuring a statement from Mary Lane. He says: "I asked her if she realized she was about to die. She said, 'Yes.'"

So the proof of a sense of impending death at the time of the second declaration is ample. There was no error in the admission of this declaration.

It is again assigned for error that the court erroneously admitted the testimony of John Smith and Frank Paul detailing statements made by Mary Lane on the day and at the time that the written statement was made.

The original written statement was prepared by Mr. Paul, who was chief clerk in the coroner's office, Philadelphia, and was signed by Mary Lane in the presence of Mr. Paul, Mr. Smith and Dr. Emmens.

This original statement he afterward irrecoverably lost. Mr. Paul produced a typewritten statement, which he swore was a true copy of the original. At this point Mr. Paul was permitted to testify to what Mrs. Lane had declared and which had been put in writing, and Mr. Smith was permitted

to swear to a similar statement made by Mrs. Lane at this time.

At the time these declarations were admitted the situation was this: It had been proved, as already stated, that the original written statement, which if in evidence would have excluded parol proof of any statement made at the same time, had been lost beyond recovery. Therefore, any proof by secondary evidence of the contents of that writing was permissible.

There are no degrees in secondary testimony, so the fact that a copy of the original may have been in existence in no way precluded other evidence of the statements which were embodied in the original. The testimony of Messrs. Paul and Smith was really confined to a statement of the contents of the original instrument. At the time when this testimony was admitted it was unobjectionable.

Afterward the copy of the original, which copy had been marked for identification, was offered and received in evidence without objection. It seems to have been thereafter treated as the true version of the original statement. The trial court then struck from the record the statements as reproduced by the parol testimony of Messrs. Paul and Smith, which testimony indeed differed in no material feature from that contained in the copy. In doing this the court was doing what in strictness it was not obliged to do, but which operated to call the attention of the jury to the fact that after the introduction of the copy it should be taken as the sole test of what was said by the dying woman.

A charge to the jury to the same purport would have been entirely proper had the testimony remained on the record.

There was no error upon this branch of the case.

Error is also assigned upon the admission in evidence of certain articles found in the house of the defendant. The articles were one bottle containing wine of ergot, another containing the fluid extract of ergot, and some knitting needles.

There was testimony that ergot and knitting needles were sometimes employed to produce abortion.

The offer of the articles was admissible. *Commonwealth* v. *Brown*, 121 *Mass.* 69; 4 *Elliott Ev.*, § 2767.

It is lastly assigned for error that the court permitted Mrs. Barnes to be cross-examined over an objection as to the color of her house, and that two other witnesses, without objection, testified respecting the same. It may be difficult to see how this testimony tended to show that the defendant was an abortionist, but neither has it, on the other hand, any significance as tending to show that she was in any way a criminal, or even a person of bad character. So, in whatever aspect it is viewed, it seems, while irrelevant, to be entirely innocuous, and produced no injury to the defendant.

The judgment should be affirmed.