(164 App. Div. 272)

### PEOPLE v. FOLLETTE. (No. 238–56.)

(Supreme Court, Appellate Division, Third Department. November 11, 1914.)

1. CRIMINAL LAW (§§ 369, 1169*)—EVIDENCE—OTHER OFFENSES—PREJUDICIAL ERROR.

In a prosecution for killing a patient by an unskillful abortion, resulting in blood poisoning, evidence of prior or subsequent abortions was inadmissible, as the only issue was whether defendant caused the blood poisoning, and where the prosecuting attorney repeatedly obscured the issue by the introduction of evidence of such prior and subsequent offenses, the error will be deemed prejudicial; defendant's evidence, if believed, exonerating him from the charge.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 754, 822–824, 3088, 3130, 3137–3143; Dec. Dig. §§ 369, 1169.*]

2. CRIMINAL LAW (§ 369*)—UNSKILLFUL OPERATION—OTHER OFFENSES.

In a prosecution for killing a patient by an unskillful abortion, resulting in blood poisoning, testimony of a woman detective that she made an arrangement with defendant to commit an abortion upon the person of her daughter is inadmissible.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 822–824; Dec. Dig. § 369.*]

3. WITNESSES (§ 337*)—CROSS-EXAMINATION TO DISCREDIT.

An accused, testifying for himself, is subject to cross-examination, and may be asked as to the commission of other crimes, to discredit him.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1113, 1129–1132, 1140–1142, 1146–1148; Dec. Dig. § 337.*]

4. WITNESSES (§ 337*)—IMPEACHMENT — COLLATERAL MATTERS — CONTRADICTION.

When the credibility of accused is assailed by asking him as to commission of past crimes collateral to the issue, the prosecution is bound by his denial, and cannot contradict him.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1113, 1129–1132, 1140–1142, 1146–1148; Dec. Dig. § 337.*]

5. CRIMINAL LAW (§ 1170½*)—REVIEW—PREJUDICIAL ERROR—CROSS-EXAMINATION OF ACCUSED.

In a prosecution for killing a patient by an unskillful abortion, to cross-examine accused as to whether he had procured a witness to testify

falsely in a prior case before the grand jury, nothing being shown as to what became of the case, is prejudicial error.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3129–3135; Dec. Dig. § 1170½.*]

Kellogg, J., dissenting.

Appeal from Ulster County Court.

Henry A. Follette was convicted of manslaughter in the first degree, and he appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Augustus H. Van Buren, of Kingston (Frank W. Brooks, of Kingston, of counsel), for appellant.

William D. Cunningham, Dist. Atty., of Kingston, for the People.

WOODWARD, J. The defendant was indicted for the crime of manslaughter in the first degree. The case was sent to the County Court of Ulster county for trial. The jury found a verdict of guilty, and there is no doubt that there was evidence which would justify the verdict. However, there is so much of error in the case, and it is so uncertain what the jury might have done, if it had been tried with a proper regard for the rights of the defendant, that I am unwilling to hold that the defendant may not have been prejudiced by these errors, and so have been deprived of his rights under the Constitution and laws of this state. It is difficult to read the evidence in this case and not to be prejudiced against the defendant. There is little in the record which could inspire any other emotion than that of disgust; but, to quote the language of Lord Chatham in the Address to the Throne:

"For my own part, I consider him merely and indifferently as an English subject, possessed of certain rights which the laws have given him, and which the laws alone can take from him. * * * In his person, though he were the worst of men, I contend for the safety and security of the best; and God forbid, my lords, that there should be a power in this country of measuring the civil rights of the subject by his moral character, or by any other rule but the fixed laws of the land."

[1] Upon the trial of the case the people contended that the defendant had produced the death of a Mrs. King by means of an unskillful abortion, and the evidence upon this point is not so clearly conclusive that it might not have been discredited by the jury, if it had not been for the fact that the district attorney, with a zeal which outran his sense of fairness, persisted in trying the defendant for a long series of alleged abortions, both present and prospective, and by insinuation and innuendo so surrounded the defendant with the atmosphere of crime that no jury could be fairly expected to keep in mind the one crime with which he was charged in the indictment. Indeed, it may be fairly said that, except for the ante-mortem statement of Mrs. King in reference to the alleged treatment by the defendant, there was not sufficient evidence to support the verdict upon the real crime charged against the defendant, and her own declaration under oath

shows her to have been the moving cause of the alleged crime, and might justify a jury in disbelieving her testimony.

It is to be remembered that the crime charged is not the producing of an abortion, but the killing of Mrs. King while engaged in producing an abortion, and the evidence is to the effect that the death was produced by blood poisoning. Nothing was said in the ante-mortem statement, made under oath, on this point; but a physician who was present testified that after this statement was made that he talked with Mrs. King in reference to the practice of the defendant, and that she told him that the defendant took an instrument, held it under the faucet of the city water pipes, and then wiped it off on a soiled towel and inserted the same in the vagina, and the theory of the case is that the poison was injected by means of this improper practice. The contention is that the instrument, to be safely used, should have been boiled. The physicians testified that in their opinion the infection or blood poisoning was introduced into this Mrs. King by some instrument, or otherwise, from the outside of a human body; that it was a germ from the exterior of a human body, introduced into her by means of an instrument or otherwise; and it is easy to see how an issue of this character could be wholly lost sight of in the flood of nastiness with which the district attorney surrounded the trial.

But there is evidence in the case that Mrs. King, who desired to be rid of the child, had herself made use of a syringe, and it is just as probable that she may have introduced the poison, as that it was introduced by means of an instrument improperly sterilized in the hands of the defendant; and an issue of this character ought to be kept as free as possible from all outside matters. The fact that the defendant, in the year 1904, may have produced an abortion upon some other woman, is not evidence in support of the theory that the death of Mrs. King was caused by the use of an improperly sterilized instrument in the year 1913; nor does the fact, if it be a fact, that the defendant, subsequent to the death of Mrs. King, was willing to undertake a like employment, tend to establish the theory of the prosecution as to the cause of the death for which the defendant was on trial. Yet all of these matters were permitted to be placed before the jury in great detail, and with a disgusting coarseness calculated at all times to take from the attention of the jury the one point upon which they had any duty to perform.

The issue was not whether the defendant was an abortionist, but whether he had produced the death of Mrs. King; and upon this point, without the hearsay testimony of one of the physicians of what Mrs. King had told him after making her ante-mortem statement, the case would be practically barren of evidence to support the verdict. It is probably true that this testimony on the part of the doctor was competent; but it was of a character which would not be received, except for the fact that Mrs. King was about to die, and it is not entirely certain that she understood the technical questions of the doctor, or that he clearly understood her answers in their relation to her understanding of the questions. In any event, the issue should have been closely confined to the question of the cause of death, and

not have been permitted to be obscured by a review of the professional life of the defendant, and all the other matters which were intruded into the trial of this case.

[2] It is practically conceded that it was error to permit the woman detective to testify to the interview with the defendant after the alleged crime, in which she claimed to have entered into an arrangement with the defendant to produce an abortion upon the person of her daughter; but it is urged that this did not operate to prejudice the defendant, because there is so much other evidence in the case. But if we keep in mind the fact that it was not for the crime of abortion that he was on trial, but for producing the death of a particular person while in the act of producing an abortion, it will be seen that there is in fact very little evidence to support the verdict, and that the introduction of evidence of other alleged crimes, closely related in character to that with which the defendant was charged, but wholly different in the essential issue presented, was admirably calculated to secure a conviction on general principles, rather than upon the legitimate evidence bearing upon the issue presented by the indictment.

[3, 4] The defendant took the stand in his own defense, and told a story of his treatment of Mrs. King, which, if believed, would have entirely exonerated him. He claims that Mrs. King came to him suffering from the effects of an attempted abortion performed by herself, and that he made an examination of her, and advised her she was in a dangerous condition, calling in another physician to confirm his diagnosis; and while the jury were not bound to believe his testimony nor that of his witness, the physician who was called in by him, yet the case is one which upon the real issue is not so wholly preponderating as to justify this court in closing its eyes to manifest error in the conduct of the trial. The defendant, having taken the stand in his own defense, was, of course, subject to cross-examination. It was proper that he should be asked in relation to the commission of any crimes in the past, for the purpose of discrediting his testimony; but there is a limit to which cross-examination may go in the case of a defendant who is thus in a degree compelled to take the stand. "As a witness," say the court, in People v. De Garmo, 179 N. Y. 130, 134, 71 N. E. 736, 737, "he was subject to the usual test of cross-examination and could, unless he claimed his privilege, be compelled to disclose 'any vicious or criminal act of his life.' People v. Webster, 139 N. Y. 73, 84 [34 N. E. 730, 733]. But such testimony was not material to the main issue, and bore simply upon his credibility. The evidence was not competent to prove that he was criminally inclined, or to establish his probable guilt of the crime charged, because of his commission of other offenses, but only to show that his testimony was unworthy of belief. * * * At this point we encounter one of the limitations of the rule governing the impeachment of witnesses that was lost sight of in the case at bar. When the credibility of the defendant as a witness was assailed by compelling him upon his cross-examination to give testimony which, although competent for purposes of impeachment, was collateral to the main issue, the prosecution, at whose instance the collateral evidence was elicited, was bound thereby, and had

no right to contradict it. This is an inflexible limitation of the rule referred to, and illustrations thereof are to be found in" cases cited by the court.

In the case now under consideration, the defendant was asked in reference to an alleged abortion performed upon the person of a young woman in 1904 at the alleged request of a rich manufacturer. This the defendant denied. From that point the district attorney practically put him on trial for the alleged crime committed 11 years before, and compelled him to admit matters appearing of record in an action which the defendant had brought to recover for his services in connection with that case. This was not contradicting the witness, in the sense of calling a witness against him; but in bringing the record into court and cross-examining from such record, under circumstances which made it impossible for the defendant to explain, the spirit of the rule was broken, and the defendant was placed before the jury in the light of all of the details of the old transaction which the district attorney thought proper to bring out. In this manner the defendant was placed at a disadvantage, and one which is not justified by the authorities in this state. The proper limitations are fully recognized in People v. Nelson, 145 App. Div. 680, 130 N. Y. Supp. 488, decided by this court in 1911, and I see no reason why this particular case should be made an exception to the rule. See People v. Freeman, 203 N. Y. 267, 270, 96 N. E. 413; People v. Pettanza, 207 N. Y. 560, 564, 565, 101 N. E. 428; People v. Faulhaber, 152 App. Div. 101, 136 N. Y. Supp. 546.

[5] Before concluding I will call attention to that portion of the cross-examination of the defendant where he was asked by the district attorney:

"Did you induce the same Dr. Kimball that you have mentioned in your testimony to appear before the grand jury in the year 1901, and testify falsely in your behalf in a case then pending against you for a criminal abortion upon the person of Estelle Roosa?"

This was objected to, the objection overruled, and then followed a series of questions which could have been asked only for the purpose of getting before the jury the fact that there had been a charge of abortion against the defendant at some previous time without disclosing what came of it. This examination was clearly prejudicial, and tended to fix the mind of the jury on an issue other than that presented by the indictment under which the present trial was conducted.

The judgment appealed from should be reversed, and a new trial granted. All concur, except

JOHN M. KELLOGG, J. (dissenting). The evidence has been examined with great care. The judgment does not rest entirely upon the dying declarations of the deceased. The admissions made by the defendant to Policeman McGowan, who the defendant believed was the husband of the patient seeking advice as to her treatment, and his admission to Coroner Murphy, who he requested to see the coroner of the adjoining county and prevent the proceedings before the coroner from being filed, show clearly that the defendant performed the op-

eration charged, and are entirely inconsistent with his testimony upon the stand. The testimony of the defendant, Dr. Kimball, and the witness Roe, called by him, are improbable, and are opposed to the established facts in the case. The guilt of the defendant was established by competent evidence beyond all question.

Under section 14 of article 6 of the Constitution, a county judge of any county may hold County Court in any other county, when requested by the county judge of such other county. The court was therefore properly organized.

After the alleged crime was committed, a female detective called upon the defendant. She swore that he made arrangement with her to commit an abortion upon the person of her daughter. This is alleged as error. It is also alleged that it was improper to ask the defendant if, upon the trial of other charges against him for abortion, he had not procured witnesses to swear falsely in his behalf, and other questions of like nature, which indicated that he had been previously indicted for abortion. Inquiries were also made of him as to other alleged abortions committed by him.

We need not pass upon these questions, for the guilt of the defendant is so plain that this evidence, if erroneously received, could not have changed the result. His own evidence, added to the other competent evidence in the case, was a substantial demonstration of his guilt, and a reversal upon the grounds urged would be for reasons which could not have affected the result.

The conviction should therefore be affirmed.