### SHUFFIELD *v.* STATE.

Opinion delivered October 25, 1915.

1.  ARSON—SUFFICIENCY OF EVIDENCE.—The evidence held sufficient to warrant a conviction of accused of the crime of arson.

2.  EVIDENCE—ARSON—SIMILAR ACT.—Defendant and a companion were searched for firearms by a constable and his deputy, they being charged with creating a disturbance. The barn belonging to the constable was burned that night, and defendant was indicted for the crime of arson. *Held,* testimony by one S., the deputy constable, that defendant burned his fence and corn tops the same night, was admissible, under the circumstances, to show the motive or intent of the defendant, and also because it tended to show the incendiary origin of the fire.

3.  EVIDENCE—ARSON—OTHER ACTS—HEARSAY.—The above evidence, while proper under certain circumstances, *held* inadmissible on account of being hearsay on the part of witness S. in this particular case.

4.  CRIMINAL LAW—CHARACTER OF ACCUSED.—In a criminal prosecution when defendant did not put his character in evidence, the State may not show his bad character. The prosecution can not resort to the bad character of the accused as a circumstance from which to infer guilt.

5.  CRIMINAL LAW—CHARACTER—SPECIFIC ACTS.—Neither good nor bad character can be proved by specific acts or deeds.

Appeal from Hot Spring Circuit Court; *W. H. Evans*, Judge; reversed.

*H. B. Means,* for appellant.

The State wholly failed to prove the *corpus delicti.* The presumption is that the fire was either the result of accident or some providential cause. 253 Mo. 487; 98 Miss. 723.

The court erred in permitting W. T. Shuffield to state to the jury that the barn was set on fire.

The appellant did not place his character in issue and hence it could not be assailed. 14 Cent. Digest, Sec. 839, p. 1487; 165 S. W. Tex. 194.

*Wallace Davis,* Attorney General, *John P. Streepey,* Assistant, and *D. D. Glover,* for appellee.

The *corpus delicti* may be proven by circumstantial evidence as well as by positive evidence. 28 L. R. A. (N. S.) 538 note; 1 Okla. Crim. Rep. 307; 97 Pac. 1052; 155 Ala. 93; 28 L. R.A. 537; 91 Ga. 11; 16 S. E. 100; 150 Ill. 181; 28 L. R. A. (N. S.) 287.

HART, J.    Walter Shuffield and Walter Counts were jointly indicted for the crime of arson charged to have been committed by burning the barn of W. T. Shuffield on the 22d day of November, 1914, in Hot Spring County, Arkansas. They severed and the defendant Shuffield was convicted and from the judgment of conviction has duly prosecuted this appeal. On the trial of Shuffield the State proved a state of facts substantially as follows:

W. T. Shuffield was constable of Bismarck Township in Hot Spring County, Arkansas, and on the night of November 22, 1914, was called to a church in the township to quell a disturbance. Some one had been shooting

at the church with pistols and he deputized Joe Sanders to go with him to the church. They searched all the people found at the church, including Walter Counts and the defendant, Walter Shuffield. Counts and the defendant both cursed the constable and both in effect, threatened him. Shuffield then went home and his barn was burned about twelve o'clock that night. The barn had a scuttle-hole which had been covered with corn tops and it appeared that it was set on fire at that place. An examination of the ground around the barn showed tracks made by shoes about the size of those worn by the defendant. The tracks led back to a point where two horses had been hitched, and it appeared that one of these horses had run away. The track of the other was followed and led to the residence of the mother of Walter Counts, where he resided. This track was of the same size and shape as that made by the horse of Walter Counts which he had ridden on the night before.

Joe Sanders, the man who was deputized by the constable to assist in quelling the disturbance and who helped to search the defendant and Walter Counts, had a bottom field about four miles distant from the burned barn. The tracks of the horses which led up to the place where they had been hitched near the barn the night of the fire came from the direction of Sanders' bottom field. The evidence showed that some of the corn tops which were in Sanders' bottom field were set on fire earlier in the night on the same night that the constable's barn was burned. Other evidence tended to show that the defendant and Counts rode in the direction of this bottom field when they left the church.

W. T. Shuffield aroused some of his neighbors when he discovered that his barn was on fire and one of them, on his way there, found Walter Shuffield's horse loose in the road. The next day the defendant said to this witness, "Walter Counts played hell when he turned my horse loose."

(1) Evidence was adduced in behalf of the defendant tending to show that he was not guilty, and it is contended by his counsel that the evidence on the part of the State is not sufficient to show his guilt. Without commenting upon it, we are of the opinion that the evidence on the part of the State, if believed by the jury, was sufficient to establish the guilt of the defendant.

(2) It is next contended that the court erred in permitting Joe Sanders to testify that the defendant burned his fence and corn tops on the night that W. T. Shuffield's barn was burned. It is urged that this testimony was inadmissible for the reason that one crime cannot be proved as a circumstance from which to infer guilt of the commission of another. Though this is true, we think evidence that the corn tops of Joe Sanders were burned on the same night was admissible under the circumstances not only to show the motive or intent of the defendant, but also because it tended to show the incendiary origin of the fire. It will be remembered that Joe Sanders was deputized by the constable to help search the defendant and Walter Counts at the church house. They were both threatened by the defendant and Counts and later, on the same night, both the barn of the constable and fence and corn tops of the person who was deputized to assist the constable were burned. *Nash* v. *State,* 120 Ark. 157.

(3) The testimony complained of, however, was incompetent for another reason. An examination of the record shows that it was hearsay. Joe Sanders was told the next day after the fire that his corn tops were burned the night before and that the defendant had burned them. His testimony in regard to the matter was hearsay and should not have been admitted on that account.

(4) The father of the defendant was a witness in his behalf and on cross-examination, over the objection of the defendant, was asked whether it was true that his son, naming the defendant, had pleaded guilty before a justice of the peace to a charge of stealing chickens and answered that it was true. The admission of this testi-

mony was erroneous, and its admission was prejudicial to the rights of the defendant. It is the settled rule of this State that the prosecution cannot resort to the bad character of the accused as a circumstance from which to infer guilt and this doctrine is founded upon the wise policy of avoiding unfair prejudice or unjust condemnation which such evidence might induce in the minds of the jury. In the case before us the defendant did not put his character in evidence and the State had no right to show his bad character. *Ware* v. *State,* 91 Ark. 555; *Younger* v. *State,* 100 Ark. 321.

(5)   Moreover, it is well-settled that neither good nor bad character can be proved by specific acts or deeds. *Hardgraves* v. *State,* 88 Ark. 261.

For the error in the admission of the testimony just referred to, the judgment must be reversed and the cause remanded for a new trial.