(No. 24220.
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* C. L. CHENEY, Plaintiff in Error.

*Opinion filed February 16, 1938.*

GEORGE SPITZ, and JULIUS E. MATTESON, for plaintiff in error.

OTTO KERNER, Attorney General, LATHAM CASTLE, State's Attorney, A. B. DENNIS, and JOHN G. BOYLE, JR., for the People.

Mr. JUSTICE ORR delivered the opinion of the court:

C. L. Cheney was indicted in DeKalb county for causing the death of Marian Buck by abortion. A jury found him guilty of manslaughter and this court reviews the record upon his writ of error.

Dr. Cheney, aged sixty-one, had been a practicing physician in DeKalb for nearly thirty-five years. Marian Buck, unmarried and twenty-four years old, worked as a domestic in Dixon, and visited her home in Franklin Grove about once a week. While keeping company with Lyle Zeigler, a factory employee, she became pregnant. In the latter part of January, 1936, Marian visited defendant at his office on two occasions; a third visit on February 1 is alleged, but denied by defendant, who admitted the first two visits. On February 2, Dr. F. E. Duncan of Franklin Grove was called to treat Marian at her home; upon making a physical examination, he found a vaginal discharge accompanied by small blood clots and cramping pains in the abdomen. He told Marian her condition was serious; she informed him she had been pregnant. The following day he removed certain tissue protruding from her womb. Her condition improved under treatment until February 10, when she suddenly became worse and was removed to a hospital in Dixon, where she died on February 16, following.

At the trial, after preliminary proof had been made, the trial court allowed a written declaration that was purported to be a dying declaration of Marian to go to the jury, and be taken to the jury room at the conclusion of the case.

The questioned declaration is as follows:

"February 13, 1936.

"Supplementary to statement made Feb 3. I, Marian Buck, being aware of the seriousness of my illness & knowing that I may not recover, wish to again make a statement that I visited Dr. Cheney of DeKalb, Jan 22, Jan 26. & Feb 1. On each of these visits the doctor used instruments to dilate the womb & cause a miscarriage for which he was paid a fee of $25 (twenty-five dollars)

Witnesses

F. E. Duncan
Agnes F. Florence
Helen Rickard"

It was written by Agnes Florence in ink, upon stationery of the hospital. It was not signed by Marian with her signature, but just below the terminating words of the declaration was an impersonal scrawl in ink, about five-eights of an inch long and resembling vaguely the capital letter "J." Agnes Florence was in charge of the hospital and Helen Rickard was a nurse whose services were secured by Dr. Duncan. No other persons were in the room on the morning when the declaration was made. After an examination of all the evidence detailing the circumstances at the time the declaration was made, we are convinced that Marian then was under a fixed belief that her death was certain and imminent.

We are not satisfied, however, that the whole declaration was properly admitted in evidence. It was shown without question that Dr. Duncan dictated the first part of the declaration,—i. e., "Supplementary to statement made Feb 3. I, Marian Buck, being aware of the seriousness of my illness & knowing that I may not recover." This preamble, dictated entirely by Dr. Duncan, enabled him to improperly inject into the dying declaration a statement entirely extraneous and unrelated to its subject matter. The admission of the whole declaration in evidence enabled the doctor to ultimately convey to the jury the idea that Marian had made a previous statement to him. If such statement of February 3 was, in fact, made, the impression is left that

it was the principal accusation against the defendant, since the statement of February 13 is denominated a supplemental one. The principal statement made on February 3 could not have been a dying declaration, as all the evidence shows that neither Marian nor the doctor had a fixed belief that her death was impending on that early date. Any conversation between Marian and Dr. Duncan as early as February 3 was obviously improper as part of a dying declaration made February 13. By this means there was brought to the attention of the jury an unsworn, verbal statement of Marian at a time when she was not expecting to die. The damaging inferences thus created were all the more harmful to defendant because Marian, in the portion of the declaration of February 3, said to be the original, said "wish to again make the statement that I visited Dr. Cheney," etc. That phrase is her assertion that she had made a principal accusation against defendant on February 3, proof of which, under no circumstances, could have been properly admitted to the jury as a dying declaration.

We are also of the opinion that the discretion of the trial court was improperly exercised in allowing the dying declaration to be taken to the jury room. Whether error of this kind is committed must necessarily depend upon the circumstances of each particular case. In *People* v. *Savant,* 301 Ill. 225, the court allowed the dying declaration to be taken into the jury room, under circumstances we held were not prejudicial to defendant. There the declaration was competent in its entirety, was very short, and the oral testimony of witnesses as to the dying declaration was the same as the written statement. While we there held the trial court did not exercise sound discretion in allowing the dying declaration to be taken into the jury chambers, it, nevertheless, did not militate against defendant in that case, due to other circumstances. In the present case, the conditions are markedly different from those in *People* v. *Savant, supra.* The determination of the guilt or innocence

of defendant here depended primarily upon whether the jury believed the statement of Marian or the testimony of Dr. Cheney. Dying declarations, because they are such, do not have any inherent or acquired superiority over the sworn testimony of living witnesses. They are a substitute for sworn testimony wherein the sense of impending dissolution takes the place of an oath. (25 A. L. R. p. 1370, and ann. notes.) When the trial court here allowed the dying declaration in evidence, it was, in effect, Marian testifying from beyond the grave. It is highly probable that the action of the trial court in allowing the declaration in evidence, over defendant's objections, impressed the minds of the laymen composing the jury that the contents of the declaration spoke nothing but the truth. It amounted to taking the prosecuting witness into the jury room where she could continually plead her case, while the law kept the defendant on the outside. In *Dunn* v. *People,* 172 Ill. 582, we held that the trial court abused its discretion in allowing the declaration to go into the jury room. We there said: "To deliver the written statement to the jury so that they might have it constantly before them during their deliberations, to operate on their sympathies as well as their memories, tended to give a manifest advantage to the People over the plaintiff in error," and such course "ought not, in the exercise of sound discretion and judgment, have been pursued."

The People, with the evident intent of creating a belief in the minds of the jurors that it was the practice of defendant to perform criminal abortions, placed Florence Lantz, of·Rockford, on the stand. She was allowed to testify, over objections, that in October, 1932, she twice accompanied her sister to the office of defendant in DeKalb. On both occasions she remained in the waiting room while her sister and defendant were in his private office. She was unable to relate what took place or was said between her sister and defendant on either visit. Her only conversation with defendant was to ask him how many times they

would have to come down there. He told them another visit would not be necessary. She said they returned to Rockford and the sister lounged around the house for several days without fully dressing herself, and fully recovered in about two weeks. This witness wholly failed to testify that defendant had caused her sister to abort, or to any facts from which such a conclusion might be fairly drawn by the jury. The court did not grant defendant's request to strike this testimony, which was given at the morning session of the court, until late in the afternoon of the same day, when the testimony was ordered stricken and the jury verbally informed to disregard all that Florence Lantz had said. The absence in this testimony of any proof of abortion made it clearly inadmissible. Criminal intent cannot be established through inference of prior acts. It is difficult to calculate the harm done defendant by having this testimony with the jury for several hours. The defendant was entitled to every legal protection during the course of the trial so his fate could be determined solely upon facts legally in evidence against him. A written instruction was tendered by defendant directing the jury to disregard the Lantz testimony in arriving at its verdict, but this was refused. Defendant would have been better protected in the jury room by the presence of a written instruction clearly informing the jury the testimony of Mrs. Lantz was not to be considered in their deliberations; the oral instruction was not the protection demanded by law under the circumstances. Where the case is·close on the facts and the evidence is conflicting, it is of the utmost importance no error should occur to prejudice the accused. Where the trial court gives verbal instructions during the taking of testimony to disregard testimony stricken from the record, the defendant is entitled to an instruction at the close of the case informing the jury to disregard all matters stricken from the record. (*People* v. *Hamilton,* 268 Ill. 390.) Because the jury should not consider any testimony stricken

out of the record it should be instructed, in writing, not to consider such stricken testimony. *People* v. *Maruda,* 314 Ill. 536.

The errors complained of and considered in this opinion were of such character as to deprive the defendant of a fair and impartial trial. The judgment is, therefore, reversed and the cause is remanded.

*Reversed and remanded.*