No. 34,247

THE STATE OF KANSAS, *Appellee,* v. JOHN OLLIE WHEATON, *Appellant.*

(89 P. 2d 871)

Opinion filed May 6, 1939.

*D. F. Stanley,* of Mankato, for the appellant.

*Jay S. Parker,* attorney general, *A. B. Mitchell,* assistant attorney general, and *L. E. Weltmer,* county attorney, for the appellee.

The opinion of the court was delivered by

THIELE, J.: Defendant was convicted of the crime of statutory rape, and appeals. His principal complaint is that he was unduly restricted in presenting his defense because proffered evidence, a considerable part of which was later shown on motion for new trial, was excluded.

On September 30, 1938, the prosecutrix, Ethel Dieleman, was thirteen years of age. Her family had lived in Missouri and, her parents having died, in November, 1934, she came to Cloud county, Kansas, to live with defendant and his wife, the latter being her mother's sister. In the summer of 1938 the family moved into Jewell county. There is no dispute as to the above. The offense of which defendant

was convicted occurred September 11, 1938, and as to the state's evidence to support the charge, and to which reference is later made, there is little or no complaint.

The cross-examination of the prosecutrix was not limited to matters disclosed by the direct examination. She was asked about conversations with various persons, some dealing with sexual matters, some with family matters, and her answers went considerably. into details, which need not here be repeated.

In defense, the defendant sought to show, in part, that the girl's father was a ne'er-do-well, and that her parents' home was apparently deplorable from a sexual standpoint; that her sister was syphilitic; that the girl had an exaggerated capacity for falsifying and an uncontrollable sexual desire. An effort was also made to elicit testimony denying the truthfulness of specific statements made by the prosecutrix during her cross-examination, especially as they might bear on her being either a persistent liar or a sexual pervert.

In support of his contention that all such evidence should be admitted, appellant cites and quotes at length from Wigmore on Evidence (1934 Supp. to second edition, § 924a, p. 379 *et seq.*) on the general subject of "Woman Complainant's Chastity in a Charge of Sexual Crime," wherein the author says:

"No judge should ever let a sex-offense charge go to the jury unless the female complainant's social history and mental make-up have been examined and testified to by a qualified physician,"

And,

"It is time that the courts awakened to the sinister possibilities of injustice that lurk in believing such a witness without careful pyschiatric scrutiny." (p. 380.)

The above statements are supported by statements of medical authorities.

In the case before us the appellant had no expert witness available, but he contends that had one been present he would have given only his opinion, and that the jury should have' been permitted to hear the evidence and draw its own conclusions. That is further than the distinguished author would go and he takes cognizance of the fact that the practice advocated by him as indicated in the above quotations could not be followed, as several rules of evidence stand in the way of such an inquiry, and must be modified or changed, *i. e.:* (1) The rule about kind of moral character. (2) The rule against using specific instances of conduct. (3) The rule of juvenile

court statutes against using the findings later against the juvenile. (4) The rule against opinion to moral character.

And he suggests a statute to cover his proposals. But assuming we would otherwise agree, appellant failed to bring himself within the practice advocated. For reasons which will later appear we shall not pursue the above contention further.

In rejecting some of the proffered evidence the trial court assigned as a reason that it was collateral—in other instances, that reason was supplemented by statement that appellant was bound by the answer of the witness elicited on cross-examination. Appellant contends the evidence rejected as collateral was not so. This contention is predicated on the contention above considered that such evidence was primary and competent. The contention cannot be sustained.

Appellant next insists the rejected evidence was competent for purposes of impeachment. Although there is some slight contention made because of objections sustained to one or two questions asked, generally there is no complaint that full cross-examination of the state's witnesses was not permitted. The extent of cross-examination rests in the sound discretion of the trial court (State, ex rel., v. Christensen, 132 Kan. 192, syl. ¶ 2, 294 Pac. 892; State v. Carter, 148 Kan. 472, syl. ¶ 1, 83 P. 2d 689). The cross-examination was not unduly limited. But the appellant had no right to inquire into all sorts of collateral matters, or into matters entirely foreign to the direct examination of the witness, and then attempt impeachment, proving falsity of some or all of the answers. Appellant was bound by the answers of the witness to questions asked on cross-examination and pertaining to collateral matters. (State v. Carter, supra.)

Appellant also complains of the following: A witness had been qualified and testified the reputation of the prosecutrix for truthfulness and veracity was bad. She was then asked: "Would you believe her under oath?" Her answer that she would not was stricken out, and the ruling is assigned as error, 28 R. C. L. 628, 629, being cited. A rule in support is there noted, also the rule the question is never proper, as it calls for the mere expression of the witness' opinion. And the rule is also noted that the question should be limited to whether from the witness' knowledge of the reputation of the one under attack, he would believe him. The latter rule has been recognized in this state. (See State v. Johnson, 40 Kan. 266, 269, 19. Pac. 749.) We fail to see that material error was committed.

In cases of the type before us, the weight and sufficiency of the evidence are carefully to be considered. In 52 C. J. 1087 (Rape § 118) it is said:

"The courts have repeatedly approved Sir Matthew Hale's statements in regard to the crime of rape, that 'it must be remembered, that it is an accusation easily to be made and hard to be proved, and harder to be de-. fended by the party accused, though never so innocent'; and that we should 'be the more cautious upon trials of offenses of this nature, wherein the court and jury may with so much ease be imposed upon without great care and vigilance; the heinousness of the offense many times transporting the judge and jury with so much indignation that they are overhastily carried to the conviction of the person accused thereof by the confident testimony some-times of malicious and false witnesses.' To be sufficient to sustain a conviction, the evidence must show beyond a reasonable doubt that defendant committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction." (p. 1087.)

We need not detail all of the statements of the prosecutrix. It is sufficient here to state that defendant and the prosecutrix were at the office of the county attorney, who, in the presence of the sheriff . and undersheriff, charged defendant with being guilty of sexual intercourse with the prosecutrix. The prosecutrix, as a witness, gave her version of the conversations between the defendant and the county attorney, in which she stated defendant admitted he might have had sexual intercourse with her once, and at which time she charged him with having done so on the preceding night. (It was this particular offense of which defendant was convicted.) The sheriff's examination is abstracted as follows:

"A. Mr. Weltmer says to Mr. Wheaton, 'Well,' he says, 'I think we have got to the bottom of this thing.' He says, 'It wasn't Mr. Collins that's been mistreating this girl, it's you.' Whether Mr. Wheaton answered right at that time or not, I don't know, but finally Mr. Wheaton says, 'Well, I don't know what you are driving at.' And Mr. Weltmer says, 'You do know what I am driving at.' He says, 'You are the one that is mistreating this little girl, and you have had sexual intercourse with her.' 'No,' he says, 'I haven't.' Weltmer says, 'You won't deny to me that you have had sexual intercourse with this girl.' 'Well,' he says, 'I am not denying anything.' 'Well,' he says, 'You are not denying that you had sexual intercourse with her several times.' 'No,' he says, 'I haven't.' He says, 'You never had?' 'Well,' he says, 'I might have had once.' And just before he said, 'I might have had once,' well, he said he hadn't, and the little girl got up across from the other side of the table, and pointed her finger right at Mr. Wheaton, and said, 'Uncle Ollie, you know you had,' and she said, 'You did just last night.' The girl laid down with her head on the table and cried, and then is when Mr. Wheaton said, 'Well, I

might have once.' Mr. Weltmer said, 'Now, we are going to take this girl to a doctor, we are going to have her examined.. If the doctor says she is pregnant, who besides you, or would you have any idea of anybody besides you that would be responsible for it?' And he said, 'No.' And he says, 'We are going to have her examined by a physician, and if the physician says that she has had intercourse, who besides you, would you say, did it, if anybody?' And he said, 'I wouldn't know of anybody.' "

And the testimony of the undersheriff was to the same substantial effect. On his direct examination as a witness for himself, defendant denied ever having had sexual intercourse with the prosecutrix and denied admitting guilt or intention to admit guilt, stating he did not understand all that was asked him. On cross-examination, however, he testified:

"Q. And do you remember my asking you that if we took Ethel to a doctor, and the results of that examination showed that she had had sexual intercourse, could you tell me anybody else but you who had done that? Do you remember my asking you that question? A. No, I don't know as I do. I wouldn't say for sure.

"Q. What? A. I don't know as I do.

"Q. You don't remember that. Do you remember a similar question that I asked you about her pregnancy? A. Well, I don't know as I heard you say that. I wouldn't say."

It can thus be seen that a situation was presented where the outcome of the trial did not depend on whether the prosecutrix was truthful or accurate in all her statements, or on whether or not she was a sex pervert. The jury may have concluded either way on that testimony, but if it believed the testimony of the sheriff and of the undersheriff, and believed the cross-examination of defendant was equivocal, as its verdict shows it did, we may not say the verdict was not sufficiently based on competent and substantial testimony.

We conclude the judgment of the trial court should be and it is affirmed.