262 P.2d 1016

**STATE v. PROUD.**

No. 7945.

Supreme Court of Idaho.

May 14, 1953.

On Rehearing Nov. 17, 1953.

Thomas and Keeton, JJ., dissented in part.

Milo Axelsen and Kibler & Beebe, Nampa, for appellant.

Robert E. Smylie, Atty. Gen., Edward J. Aschenbrener, Frank Meek, Special Assts. Atty. Gen., Richard B. Eismann, Pros. Atty., Homedale, for respondent.

THOMAS, Justice.

On February 27, 1952, Darlene Pigg, accompanied by Viola Lukehart, who both resided in Boise, Idaho, went to Homedale, Idaho, for the avowed purpose of submitting to an abortion upon her person.

The two women were not acquainted in Homedale and after inquiring as to where appellant lived went to her residence. They had never met appellant before and, following a brief discussion on the porch of appellant's residence, upon invitation they went into the home of appellant and directly to the rear bedroom thereof with appellant.

There is a conflict as to what was stated and what took place in the bedroom. Mrs. Pigg, to whom we shall refer as the victim, and Viola Lukehart, to whom we shall refer hereafter as the accomplice, testified that they advised the purpose of their mission was to procure an abortion on the victim. While appellant denies this and in fact testified she did not know exactly why they had come, she did testify that she made an examination of the victim without the use of instruments and could not determine whether or not she was pregnant.

Both the victim and the accomplice testified that appellant had the victim lie on the bed, then washed her own hands in a large

washbowl and proceeded with the use of something she held in her hand covered by a washrag to perform the operation, giving the victim certain instructions in connection therewith at the time. A few minutes later appellant told the victim she might sit up, then admonished her she might have cramps and feel a gush of water on the way home; immediately thereafter the accomplice paid appellant $10, the money belonging to the victim. Appellant then took a diary book out of a dresser drawer, gave the victim a pencil and envelope and informed her she would give the victim a number to write down, and directed her to send the envelope and number back to appellant when the victim was all right. No number had been assigned to the victim when a deputy sheriff and the prosecuting attorney of Owyhee County arrived at the scene with a warrant of arrest and a search warrant in connection with another like crime charged against the appellant and purported to have been committed upon another woman on or about February 15, 1952; the officers entered the bedroom where the warrant of arrest was served upon appellant and the officers then seized a knitting needle wrapped in a wet washrag, a large white washbowl with the fluid content thereof, and a record book or diary which was in the hands of appellant at the time. Shortly thereafter the victim, accompanied by the prosecuting attorney, went to the office of Dr. Wolfe in Homedale where she was examined relative to the alleged abortion after which the victim and

the accomplice returned to Boise; the victim became ill after arriving in Boise; she was taken to one of the hospitals where Dr. Gudmundsen examined her the following evening and such examination revealed the victim was in a state of inevitable abortion which occurred on the morning of February 29, 1952.

Other aspects of the evidence will be discussed in connection with appropriate assignments of error. The matter was tried before a jury which returned a verdict of guilty. Appellant moved for a new trial which was denied whereupon judgment was rendered upon the verdict and appellant sentenced to the state penitentiary. From such judgment and from the order denying motion for a new trial, this appeal was taken.

It is urged that the trial court erred in denying appellant's motion to suppress certain evidence alleged to have been obtained by an illegal search and seizure.

It is asserted in this connection that such evidence was seized under a search warrant involving another and different crime alleged to have been committed by appellant upon another woman; it is strenuously urged that the evidence obtained thereunder should be suppressed.

The arrest and the search for and seizure of the property was made February 27, 1952, for an alleged abortion committed by appellant upon another party on the 15th day of February, 1952. The

crime with which appellant was charged and convicted was not the earlier crime but one charged to have been committed on February 27, 1952, the day of, but immediately preceding, the arrest and seizure. The fact that appellant was charged with and convicted of the commission of a crime other than the one for which she was arrested and a search and seizure were had under such search warrant, or even incident to a legal arrest without a search warrant, does not of itself render the property seized incapable of being admitted as evidence upon prosecution for the subsequent crime charged if such evidence is otherwise competent. Property seized under a valid arrest, either with or without a search warrant, but as incidental to a lawful arrest, may be used in the prosecution of such person for a crime other than the one for which he or she was arrested or for which a search warrant was issued. State ex rel. Fong v. Superior Court of King County, 29 Wash.2d 601, 188 P.2d 125, certiorari denied 337 U.S. 956, 69 S.Ct. 1525, 93 L.Ed. 1755; State v. McKindel, 148 Wash. 237, 268 P. 593; State v. Deitz, 136 Wash. 228, 239 P. 386; Smith v. State, 215 Ind. 629, 21 N.E.2d 709; Haverstick v. State, 196 Ind. 145, 147 N.E. 625; Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647; Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399. The court did not err in denying the motion to suppress the evidence.

■ It is urged that the evidence is insufficient to support the verdict because evidence of the victim was without corroboration other than the evidence of the witness Lukehart who accompanied her to appellant's home and who, the evidence discloses, played an active part in procuring the alleged abortion; in this connection it is urged that Lukehart was an accomplice and her testimony could not corroborate that of the victim.

■ Under the statute the victim's testimony requires corroboration by other evidence. Section 19–2115, I.C. If the witness Lukehart be an accomplice her testimony likewise requires corroboration by other evidence. Section 19–2117, I.C. The evidence reveals that witness Lukehart accompanied the victim to the home of the accused for the express purpose of procuring the abortion and that she was on hand and present in the room at all times during the commission of the alleged abortion, and that she had played an active part therein and would be subject to prosecution for the offense with which the accused is charged as an accomplice. State v. Gilbert, 65 Idaho 210, 142 P.2d 584; State v. Grimmett, 33 Idaho 203, 193 P. 380; State v. Stacey, 153 Or. 449, 56 P.2d 1152; People v. Clapp, 24 Cal.2d 835, 151 P.2d 237.

■ The victim of the abortion could be prosecuted under section 18–602, I.C., while both the accused and the accomplice,

but not the victim, could be prosecuted under section 18–601, I.C.; hence the victim is not an accomplice. People v. Wilson, 25 Cal.2d 341, 153 P.2d 720; State v. Willson, 113 Or. 450, 230 P. 810, 233 P. 259, 39 A.L.R. 84; 1 Am.Jur., p. 151, sec. 53. See also State v. Emory, 55 Idaho 649, 46 P.2d 67, where this principle is recognized and applied, and Anno. 139 A.L.R. 993.

■ It is not necessary nor do we decide the matter of whether a victim and an accomplice may corroborate each other. The testimony of both the victim and the accomplice was sufficiently corroborated in some material respects tending to connect the accused with the commission of the crime by the testimony of the officers who made the arrest, by a doctor in Owyhee County who examined the victim immediately following the arrest, and later by a doctor in Boise who attended her, as well as by other direct evidence and also circumstantial evidence which pointed to the guilt of accused. Although this additional testimony did not corroborate the victim or the accomplice in every detail it was sufficient to meet the requirements of corroboration. State v. Orr, 53 Idaho 452, 24 P.2d 679; State v. Gillum, 39 Idaho 457, 228 P. 334; State v. Smith, 30 Idaho 337, 164 P. 519.

■ It is urged that the court erred in admitting over objection testimony of the prosecuting attorney as to a statement made to him immediately following the arrest and at the scene thereof, but outside the presence or hearing of appellant, as to what the victim told him as to what took place; in this respect the prosecuting attorney testified that the victim stated to him that an abortion had taken place in the rear bedroom. This testimony was hearsay and it was error to admit it; however, the victim testified in minute detail as to what occurred at that time and place without objection; the matters related in this conversation were fully brought out by the victim; hence the admission of the testimony objected to under such circumstances, while erroneous, in nowise prejudiced appellant. State v. Wilson, 51 Idaho 659, 9 P.2d 497.

■ Appellant contends that the court erred in the admission in evidence over objection of a large washbowl and a portion of the cresolin solution found therein. Both the bowl and the solution were seized from appellant following a lawful arrest at the scene of the alleged crime and were definitely identified by the victim and the accomplice both of whom testified that they were used in connection with the abortion. These articles constitute a part of the res gestae of the crime and hence were properly admitted. State v. Robinson, 71 Idaho 290, 230 P.2d 693; People v. Stone, 93 Cal.App.2d 858, 210 P.2d 78; People v. Pierson, 69 Cal.App.2d 285, 159 P.2d 39;

**436**

State v. Barnes, 75 N.J.L. 426, 68 A. 145.

Appellant asserts that the court erred in the admission of a small green diary book in evidence. This was taken from the possession of appellant by the officers at the time of the arrest and at the scene of the alleged crime. The book did not contain the name of the victim or the name of any other woman. It contained countless names of cities and villages throughout the United States, each name followed by a number. At the time the officers entered the room where the abortion was alleged to have been committed appellant had this book in her hand. The victim and the accomplice both testified that immediately prior to the appearance of the officers at the scene of the alleged crime appellant had given the victim a pencil and an envelope and advised the victim she would give her a number to write on the paper, and instructed her when she was all right she was to send the number in the envelope back to appellant. Appellant then had the book in her hand and before she could give the victim a number the officers appeared on the scene whereupon appellant held it behind her back and tried to give it to the victim.

It is urged by the state that the diary book being found in the possession of appellant at the time of the arrest was connected to the crime by the testimony of the victim and the accomplice and was admissible for the reason that possession thereof at this time in itself tended to incriminate appellant and was not hearsay. If the diary book taken from the appellant at the time of her arrest tends to show her connection with the victim upon whom the operation was alleged to have been performed and that it was used in connection with the crime, it would constitute part of the res gestae and is admissible, People v. Reimringer, Cal.App., 253 P.2d 756; State v. Robinson, supra; however, no entries were made therein which in anywise related to the victim or which connected appellant or the victim with the particular crime charged. The mere possession of such book which might have been but was not used to record data in connection with the commission of the alleged crime conveys no permissible inference of guilt; it does no more than create a vague type of suspicion and inference that it was used in connection with other independent crimes; it has no legitimate tendency to implicate appellant in the offense charged and does not by any logical process provide a basis for an inference of guilt. The admission of the diary book in evidence constitutes prejudicial error.

Appellant assigned as error the ruling of the court allowing the answer of appellant on cross-examination to stand after motion to strike, wherein she testified in response to a question by counsel for the state that she had not within the last three years committed an abortion. On direct examination she testified that she

had never committed and was not capable of committing an abortion. Such examination, even though it concerned a collateral matter, was proper to the extent pursued for the purpose of discrediting the testimony of appellant; if upon a collateral matter, the answer would be conclusive and the state bound thereby. The state, not having pursued the matter further, did not in any event commit error. State v. Kritzer, 21 Wash.2d 710, 152 P.2d 967; Manos v. James, 7 Wash.2d 695, 110 P.2d 887; People v. Gin Shue, 58 Cal.App.2d 625, 137 P.2d 742; State v. Wheaton, 149 Kan. 802, 89 P.2d 871. See also People v. Follette, 164 App.Div. 272, 149 N.Y.S. 888 and State v. Choate, 228 N.C. 491, 46 S.E. 2d 476, where this rule was recognized and applied in abortion cases.

Appellant assigns as error the admission in evidence over objection of a certain letter which inferentially would tend to connect appellant with the commission of another distinct and independent crime. The letter, purportedly written by a woman who was not present at the trial and who was not in anywise identified before its admission in evidence was as follows:

"Mrs. Lena Proud: You asked me to let you know how I am. You gave me the number Fresno 62. I have had trouble from the abortion and want my money back immediately. Mail it to (name of sender), General Delivery, Council, Idaho.
                        "(Signed)"

It is a universal rule that evidence that the accused has committed another crime independent of and disconnected with the one for which he is on trial is not admissible in evidence.

As an exception to the general rule, the courts are in substantial accord that evidence of other similar crimes is admissible as tending to establish the particular crime when intent, an essential element of the crime charged, has been placed in issue. This is the established rule in Idaho, State v. Stratford, 55 Idaho 65, 37 P.2d 681; State v. Montgomery, 48 Idaho 760, 285 P. 467; State v. O'Neil, 24 Idaho 582, 135 P. 60; this rule has been applied in the prosecution for abortion. See Anno. 15 A.L.R. 2d 1080. It is not always easy to determine when such intent is placed in issue; in the instant case the defendant, in testifying, admitted that she made a physical examination of the complaining witness on the date she is charged with having performed the abortion; that in such examination she used no instrument and that the examination was made not for the purpose of procuring an abortion but was for the purpose of determining whether or not the complaining witness was pregnant; she further testified that her hands were crippled and she did not have sufficient strength in them to perform an abortion.

Where the accused in an abortion prosecution admits that an examination was made but seeks to justify such examination on the basis of some innocent purpose,

criminal intent then becomes and continues to be an important and material issue in the case and hence, under an exception to the general rule which excludes evidence of another independent crime, it is proper for the prosecution to introduce evidence of other similar offenses committed by the accused as bearing upon the intent in doing the particular act claimed or charged. Clyne v. State, 123 Ohio St. 234, 174 N.E. 767, appeal dismissed, 283 U.S. 810, 51 S. Ct. 653, 75 L.Ed. 1428; State v. Elges, Nev., 251 P.2d 590; People v. Reimringer, Cal.App., 253 P.2d 756.

Before guilty intent may be inferred from other similar crimes, such similar crimes must be established by evidence which is legal and competent and it is not permissible to prove such other crimes by hearsay. Shuffield v. State, 120 Ark. 458, 179 S.W. 650; People v. Ullrich, 299 Ill. 250, 132 N.E. 488; People v. Cheney, 368 Ill. 131, 13 N.E.2d 171, 114 A.L.R. 1514. See also 22 C.J.S., Criminal Law, § 690, p. 1113, note 83. The letter, nothing more than a charge or accusation and hearsay should have been excluded. Its admission constitutes reversible error.

The objection to the admission of both the book and the letter which was found in the book was based on broad grounds, that is, that no proper foundation had been laid; that there was a failure of identity and that such evidence was incompetent, irrelevant and immaterial, and that it was not shown that it tended to prove or dis-

prove any of the issues. At that time the element of intent had not been raised and was not an issue; there was at that time no evidence before the court on which to predicate its admission other than that it was found in the possession of appellant; it was not a part of the res gestae. While the grounds of objection did not expressly include hearsay, they were sufficiently broad to encompass it. People v. Darby, 64 Cal.App.2d 25, 148 P.2d 28. If the objection was good on the ground of hearsay or any other ground urged, its admission constituted prejudicial error.

It will not do to say that later when the accused took the witness stand in her own defense and she was cross-examined in relation to the letter and the book (both of which were already in evidence over objection) her testimony on cross-examination supplied the evidence lacking by the state initially to lay any semblance of a foundation for its admission. To do so would make the position of accused impossible. If she decided to take the witness stand in her own behalf, this should never subject her to cross-examination concerning the book and the letter, both hearsay evidence, in order that the state might to some extent remove any of the valid grounds of the objection to its admission.

Appellant asserts the court committed prejudicial error in summarily adjudging one of appellant's witnesses guilty of contempt of court, imposing a fine, and directing the sheriff to remove the witness from

the stand and take him from the court room, all in the presence of the jury. This action was taken before the witness had completed his testimony on cross-examination and obviously before re-direct examination, if any was intended, could be had.

The court has the authority to summarily punish a witness for contempt committed in the immediate view and presence of the court, section 7–603, I.C.; however, contempt proceedings in the presence of the jury might well be improper and prejudicial if such action is injurious to the rights of the accused. The rights of the accused are injured where it is likely to prejudice a jury against him or convey to the jury the court's impression of guilt or in anywise reflect the court's opinion as to the credibility of such witness, or where it may operate to intimidate witnesses subsequently called. 23 C.J.S., Criminal Law, § 995, p. 356.

We are not here concerned with the question of the court's authority to so act but only as to whether or not on the entire record such actions on the part of the court operate to the prejudice of the accused. It is so important and of first consideration under such circumstances to study the record as a whole to determine the effect on the trial of the accused. If, upon such study, a reasonable doubt exists as to whether the action of the trial judge was prejudicial to the accused, such doubt should always be resolved in favor of the accused. Here the accused was charged with a serious offense constituting a felony, was found guilty and sentence was imposed committing appellant, the accused, to the penitentiary. The jury must have, for good reason, felt the witness had committed some offense in the presence of the court and the jury, otherwise the court would not have summarily adjudged him guilty of contempt, imposed a fine and directed the sheriff to remove the witness from the stand and to take him from the courtroom, all in the presence of the jury; it is difficult to conceive how a witness could be more completely discredited in the minds of the jury than by the action taken by the court. It would be reasonable for the jurors to believe by the action taken that the witness had committed some serious crime though they did not know what it might be.

A reasonable doubt definitely appears as to whether or not the action of the court in this respect operated to prejudice the jury or operated to intimidate another witness of appellant who subsequently testified and thereby prevented appellant from having a fair and impartial trial. Where this is so, as we believe it is in this instance, it is our duty to, and we do, resolve such doubts in favor of the accused, the appellant herein. The error in this respect was prejudicial. Johnson v. State, 141 Miss. 49, 105 So. 851; Waters v. State, 80 Tex. Cr.R. 573, 192 S.W. 778; Rutherford v. United States, 2 Cir., 258 F. 855; 23 C.J.S., Criminal Law, § 995, p. 356.

440

Because of the disposition made in this case it is deemed unnecessary to discuss the remaining assignments of error, none of which are of sufficient merit to warrant a detailed discussion or to amount to reversible error.

It is my opinion that the judgment should be reversed and the cause remanded with instructions to grant a new trial in accordance with the expressions set forth herein.

KEETON, J., concurs.

PORTER, Chief Justice (concurring in part and dissenting in part).

I concur in the opinion written by Justice THOMAS except wherein it holds the trial court committed reversible error in three respects and that the judgment of conviction should be reversed.

■ Such opinion holds that the court committed prejudicial error in the admission in evidence of the small, green diary book, State's Exhibit No. 2. This exhibit contains a list of the names of numerous towns and villages, each followed by a number, and in addition, contains pages of memoranda dated from January 27 to February 27, 1952. Each page is headed by the date and the name and number of a town, for example, "February 9, Nampa 98". Each page contains short notes of identifying characteristics, such as, color of hair and eyes and whether short or tall. Also, the pages contain notes on physical condition, such as, "tense," nervous," "shock," "no trouble," "hard to help".

At the time the officers arrested appellant, the victim was still sitting on the bed at appellant's direction and was holding the pencil and paper furnished her. Appellant was in the act of assigning to the victim a number taken from the green diary. *The diary was being used in connection with the consummation of the offense* and is part of the res gestae. It is material as it tends to corroborate the victim's testimony.

In People v. Reimringer, Cal.App., 253 P.2d 756, cited in the opinion of Justice THOMAS, a diary, taken from the possession of defendant which merely contained the names and addresses of the victims, was admitted in evidence as showing some connection between the defendant and the complaining witnesses. In the instant case the victim's name was not in the diary but an identifying number in the book was being assigned by appellant to the victim. The admission of the diary in evidence was not error.

■ The opinion by Justice THOMAS, holds that the court erred in admitting in evidence "over objection" a certain letter, set out therein and "purportedly written by a woman * * * who was not in anywise identified". The diary, when offered and admitted in evidence, contained between its pages thirty-three loose sheets or parts of sheets of paper, among which were two letters, one headed "Boise 47", describing

the writer's symptoms and thanking appellant for her services, the other being the letter set out in the' opinion by Justice THOMAS. These loose papers contained memoranda similar to that on the pages of the diary. No request was made for the removal of these papers from the diary. No objection was made that such papers were not properly a part of the exhibit. No objection was made to the introduction of these papers and letters other than the general objection to the introduction of the diary. The letter in question was read to the jury at the time of the cross-examination of appellant. No objection was made by appellant to the reading of same at such time, although appellant now complains thereof.

Appellant admits receiving the letter from "Fresno 62" on February 27. She admits writing "Fresno 62" as the heading of a page in the diary dated February 15, which page contains the usual memoranda. She testified the writer of the letter came into appellant's home while appellant was working on an astrology chart and copied the number. She further testified:

"Q. Getting back to this letter you received from this lady here, what did you think about it when you got that? A. I wondered about it. I didn't know what to think. I can remember the woman coming in there and looking at that chart and talking about that number all right.

"Q. You remember this woman coming in and looking at the chart? A. Yes, but she was under a 'different name than that.

"Q. Did she pay you any money? A. She didn't give me any money. I didn't do anything for her. We had a little controversy.

"Q. Over what? A. She wanted me to do something for her, but I don't know for sure what she wanted. She wanted to know if I couldn't help her. She was leaving her husband and wanted to know if there was a place in Weiser.

"Q. Help her in what way? A. I don't know. She must have wanted an abortion. I couldn't understand it any other way.

"Q. She asked you * * *. A. Yes, If I knew how.

"Q. What did you tell her? A. I told her I didn't, my hands were so weak that I couldn't if I tried."

This testimony of appellant seems to clearly identify the writer of the letter. The letter was a part of the res gestae and was material as tending to corroborate the testimony of the victim; and would seem to be admissible regardless of the question of its admissibility to prove another crime tending to prove intent or design. In any event, absent a direct objection or challenge to the letter, how can it be now con-

tended the court committed error in respect thereto?

▉ Justice THOMAS holds that the court committed prejudicial error in summarily adjudging one of appellant's witnesses guilty of contempt of court, fining him and directing the sheriff to take him into custody until the fine was paid, all in the presence of the jury. The witness had testified that the general reputation of appellant for being a law abiding citizen and of good moral character was good. Under cross-examination he made a provocative remark concerning the court and it is not urged that the trial judge was not justified in fining him for contempt of court.

While it is true that opportunity for re-direct examination of the witness was not given, such opportunity was not requested by appellant and it is difficult to see how anything further could have been testified to by the witness.

The action of the trial court in proceeding in the contempt matter in the presence of the jury was hasty and ill considered. However, it does not appear that such action tended to disclose the opinion of the court as to the guilt or innocence of appellant or as to the credibility of the witness. Absent other reversible error, such action was not of such prejudicial nature as to require reversal of this case.

It appearing that two Justices concur with me in this opinion, it is ordered by the majority of the court that the judgment of conviction be and is hereby affirmed.

GIVENS and TAYLOR, JJ., concur.

On Rehearing

PORTER, Chief Justice.

A rehearing was granted in the above cause. Additional briefs were filed and the cause again presented orally to the Court. After a careful reconsideration of the points at issue, I am constrained to adhere to my original opinion filed herein. As two additional Justices concur, it is ordered that the judgment of the District Court be, and is hereby, affirmed.

GIVENS and TAYLOR, JJ., concur.

THOMAS and KEETON, JJ., dissent, and adhere to the original opinion filed by THOMAS, J.